OPINION OF THE COURT
Memorandum.
Judgments of conviction affirmed.
*47 While traveling home in the early morning of October 21, 2004, as she later admitted to the arresting officer, defendant swerved from her traffic lane, while trying to retrieve a dropped cell phone, and sideswiped another vehicle causing damage to both cars. In the course of the ensuing official investigation, defendant exhibited glassy eyes, impaired speech, and the odor of an alcoholic beverage. She also admitted to the officer that she had consumed two drinks at a restaurant, and she proved unable to perform roadside sobriety tests. After a chemical test of her blood alcohol content (BAG) produced a reading of .07% she was charged with driving while impaired (Vehicle and Traffic Law § 1192 [1]) and failure to use a designated lane (Vehicle and Traffic Law § 1128 [c]).
This appeal brings up for review the propriety of the admission at trial, as business records, of certified copies of the simulator solution certification and the calibration/maintenance record of the breath test instrument, issued by the New York State Police Forensic Investigation Center (FIG) and offered as part of the foundation requirements for proof of the results of the analysis of the alcohol content of defendant’s blood (People v Mertz, 68 NY2d 136 [1986]). Defendant argued below that the certifications, being testimonial in nature, are not admissible unless the certificates’ preparers are available for cross-examination (see Crawford v Washington, 541 US 36, 68 [2004]).
Crawford v Washington overturned a well-established rule that permitted, in the Court’s view, the unconstitutional extension of state law hearsay exceptions to statements that are “inherently” testimonial (cf. Ohio v Roberts, 448 US 56 [1980]). Under the new rule, the relevant inquiry is whether the statements are testimonial in nature and therefore inadmissible absent defendant’s opportunity to confront the declarants. Although deferring “for another day” a comprehensive definition of “testimonial,” the Crawford court noted that “at a minimum” it applies to “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations” (541 US at 68), and excludes statements “that by their nature [are] not testimonial — for example, business records” (541 US at 56).
Certain courts of this and other states invoke Crawford for the proposition that business records are so paradigmatic and venerable an exception to the hearsay rule as to remain unaffected by Confrontation Clause concerns (e.g. People v Grogan, 28 AD3d 579 [2006]; State v Dedman, 136 NM 561, 102 P3d 628 *48 [2004]). However, as noted below, most courts, and in our view correctly, read Crawford to require scrutiny of the contours of state law business record jurisprudence to determine whether such a record, otherwise admissible as a business record under state law, nevertheless remains testimonial in nature, entitling an accused to confront its preparer (see Green v DeMarco, 11 Misc 3d 451, 462 [Sup Ct, Monroe County 2005] [“(I)t is apparent that there is a class of business records in New York that may run afoul of Crawford”]; see generally People v Pacer, 6 NY3d 504 [2006]). Crawford's description of the class of statements that are inherently testimonial, while not exhaustive, suggests that the Confrontation Clause is implicated when “solemn declaration^] . . . made for the purpose of establishing or proving some fact” (541 US at 51) are obtained via a structured interrogation by the government or its agents, in a context wherein the declarant reasonably contemplates that the statement will be used at a subsequent judicial proceeding (541 US at 52). Construing Crawford's concerns to be primarily with “paradigmatic confrontation violations” (People v Hardy, 4 NY3d 192, 197 [2005]; see Crawford, 541 US at 60), New York courts “have tended toward . . . defining ‘testimonial’ by the presence of the formalities that surround statements prepared for in-court use,” the most salient of which is “structured questioning by an investigator” (People v Paul, 25 AD3d 165, 169-170 [2005]; see also People v Coleman, 16 AD3d 254, 254 [2005] [“Crawford repeatedly stresses the element of formality and reiterates that the Confrontation Clause was primarily directed at evidence bearing a resemblance to depositions and affidavits . . .”]). Accordingly, in People v Pacer (6 NY3d 504 [2006], supra), which involved a charge of aggravated unlicensed operation, an element of which is proof of defendant’s knowledge that his or her license is suspended, the Court of Appeals rejected the People’s claim that an affidavit alleging the State’s business procedure in mailing license suspension notices, prepared by a governmental agent for the prosecution’s use at trial, remained admissible post-Crawford as a business record, because the affidavit amounted to an accusation of an element of the offense. In so holding, the Court contrasted those facts with a case where an affidavit was not prepared at the prosecutor’s request for a particular investigation but was produced in the ordinary course of the affiant’s duties. In People v Bradley (22 AD3d 33 [2005]), the Court rejected a Crawford challenge to the admission of incriminating responses to a po *49 lice officer’s preliminary investigatory inquiry at a crime scene which, the Court concluded, did not constitute a structured police interrogation. The Court stressed the utility, for Crawford analysis, of evaluating the interrogator’s objective: “[W]here the purpose of the inquiry is to gather incriminating evidence against a particular individual, the [interrogator] is advancing a potential prosecution, and the response takes on a testimonial character” (id. at 42).
The foregoing compels the conclusion that the certifications at issue herein, which are otherwise admissible under New York’s expansive application of the business exception to the hearsay rule, are not testimonial within the contemplation of Crawford. The certificates were prepared in the course of the certifier’s routine official duties and “systematically” produced “in the conduct of [FIC] business” (People v Kennedy, 68 NY2d 569, 579 [1986]) to fulfill an official mandate that the machines be maintained in working order. Although prepared, to an extent, in recognition of their necessity in the event of litigation and constituting a part of the foundational predicate for the admission of BAG test evidence, the certificates did not result from structured police questioning, they were not created at official request “to gather incriminating evidence against a particular individual” (People v Bradley, 22 AD3d at 42; see People v Foster, 27 NY2d 47, 52 [1970] [speedometer deviation records admissible as business records because they were not produced “outside of the ordinary course of police . . . business, solely for the instant litigation” and notwithstanding that they “may later be used in litigation (as) such was not the sole purpose when they were made”]; cf. People v Grogan, 28 AD3d 579 [2006], supra; People v Rogers, 8 AD3d 888 [2004]), and they did not constitute a direct accusation of an essential element of any offense (People v Pacer, 6 NY3d 504 [2006], supra; see Green v DeMarco, 11 Misc 3d at 465-467 [“neither document ... accuses anyone of conduct that is criminal . . . (and) (t)hey are neutral in character, relating only to the operation of the breath test instrument and the reference solution used to calibrate it . . . (Thus the results) are neither discretionary nor based upon opinion”]; cf. People v Orpin, 8 Misc 3d 768 [Just Ct, Town of Irondequoit, Monroe County 2005]). Proof that a BAG testing machine functions properly may exonerate as well as incriminate and represents merely the application of an objective procedure which does not involve “the exercise of judgment and discretion, expressions of opinion, and making conclusions” (People v Nisonoff, 267 App Div 356, 369 [1944]).
*50 In the overwhelming majority of state jurisdictions, the courts have reached this result on analogous grounds (see e.g. Commonwealth v Walther, 189 SW3d 570, 575 [Ky 2006] [certification records document that the creators carried out their “routine ministerial duties” to ensure properly functioning BAG testing machines and without “ ‘demonstrable interest in whether the certifications produce evidence that is favorable or adverse to a particular defendant5 ”], quoting State v Norman, 203 Or App 1, 6-7, 125 P3d 15, 18-19 [2005]; Rembusch v State, 836 NE2d 979, 982 [Ind Ct App 2005] [the certificates “are not prepared at a judicial proceeding or during police interrogation. Moreover, they are not sworn affidavits and do not contain formalized testimonial materials. . . . Rather, the certificates serve an administrative function and are prepared in a routine manner rather than for the purpose of an individual case”]; see also Bohsancurt v Eisenberg, 212 Ariz 182, 129 P3d 471 [2006]; Luginbyhl v Commonwealth, 46 Va App 460, 618 SE2d 347 [2005]; Commonwealth v Verde, 444 Mass 279, 827 NE2d 701 [2005]; cf. Shiver v State, 900 So 2d 615 [Fla Ct App, 1st Dist 2005]). Thus, the court below properly ruled the herein certifications admissible as business records.
Defendant’s remaining contentions are without merit. The arresting officers’ account of their personal experience and police training with respect to the effects of alcohol on behavior sufficed to enable the court below to properly evaluate their opinions as to the degree of defendant’s impairment as a result of alcohol consumption (People v Cruz, 48 NY2d 419, 428 [1979]; see Prince, Richardson on Evidence § 7-202 [h] [Farrell 11th ed]). While police reports are generally inadmissible as business records, to the extent that “the declarant [was] under a duty to make the statement^] to the recording police officer” (People v Maisonave, 140 AD2d 545, 547 [1988]), there was no error in the admission of so much of the report as contained the declarant’s statements (see also Holliday v Hudson Armored Car & Courier Serv., 301 AD2d 392, 396 [2003] [police accident reports “admissible as business records so long as the report is made based upon the officer’s personal observations and while carrying out their police duties”]; accord Lopez v Ford Motor Credit Co., 238 AD2d 211 [1997].) Moreover, the court sustained defendant’s objection to so much of the reports’ contents as constituted hearsay and evidence cumulative of other testimony, and we must presume, “by virtue of . . . learning and experience, [that 'the court] considered only the competent evidence *51 adduced in reaching [its] determination” (People v Latella, 112 AD2d 324 [1985]; see also People v Torres, 1 AD3d 621 [2003]; People v Rooney, 5 Misc 3d 126[A], 2004 NY Slip Op 51188[U] [App Term, 9th & 10th Jud Dists 2004]). In any event, given the overwhelming proof of guilt, the error, if any, was harmless (People v Morgan, 174 AD2d 1034, 1035 [1991]).
We also find that the court properly admitted the BAG test results notwithstanding that the officer who administered the test may not have maintained a “[Continuous observation” of defendant for 15 minutes prior to the test (10 NYCRR 59.5 [b]) during the few minutes his attention was devoted to preparing the BAG machine for testing. There was no evidence that the officer failed to observe any event that would have undermined the accuracy of the test results, and, in any event, proof of the requisite “continuous observation” is not a predicate condition for the test results’ admission; rather, it “goes only to the weight to be afforded the test result” (People v Terrance, 120 AD2d 805, 807 [1986]; People v Jones, 10 Misc 3d 413, 417 [Dutchess County Ct 2005] [same]). Thus, the observation requirement is not strictly construed: “Neither the statute, the regulations nor the exercise of reason call for [a] constant vigil” (People v Williams, 96 AD2d 972, 973 [1983], revd on other grounds 62 NY2d 765 [1984]; see also People v McDonough, 132 AD2d 997, 998 [1987] [although “arresting officer testified that he was doing some paperwork at the time,” continuous observation rule was satisfied as he was nevertheless able to observe whether defendant “did anything with his hands, belched, or regurgitated”]). Further, defendant did not object below that the court’s limited questioning of the People’s witnesses implied a shifting of the burden of proof (CPL 470.05 [2]; People v Allen, 69 NY2d 915, 916 [1987]; People v McAloney, 2 AD3d 538, 539 [2003]), and upon a review of the record, we find no merit to the claim.
Finally, viewing the evidence in the light most favorable to the People (People v Contes, 60 NY2d 620, 621 [1983]) and according it every “valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the fact finder” (People v Williams, 84 NY2d 925, 926 [1994]), there was sufficient proof of guilt. A person is “impaired” whenever, “by voluntarily consuming alcohol, [he or she] has actually impaired, to any extent, the physical and mental abilities which he [or she] is expected to possess in order to operate a vehicle as a reasonable and prudent driver” (People
*52 v Cruz, 48 NY2d at 427 [emphasis supplied]; see also People v Reding, 167 AD2d 716, 717 [1990] [noting “the far less rigorous proof required to establish (driving while impaired)”]). In addition to the BAG reading, which may be accorded the evidentiary weight to which it is statutorily entitled (Vehicle and Traffic Law § 1195 [2] [c]), defendant admitted she swerved out of lane and struck another vehicle, and offered an explanation for the event, that she leaned forward to retrieve a dropped cell phone, which revealed, at the very least, a diminished capacity for judgment and resulted in the loss of control over her vehicle (e.g. People v Lizzio, 178 AD2d 741, 742 [1991] [proof that defendant’s vehicle struck another vehicle where there was little traffic was a basis on which to infer impairment]). Both officers detected the odor of an alcoholic beverage on defendant’s breath, she admitted to having consumed two “sakis” and, according to the People’s expert witness, defendant’s blood alcohol content, given defendant’s weight, suggested that depending on the saki’s alcohol content she must have ingested three or more to produce that reading. Defendant’s lack of candor as to her alcohol consumption before the accident permits an inference that a consciousness of guilt impeded her willingness to admit the extent of her drinking. In the officers’ opinion, defendant’s overall physical demeanor was consistent with someone impaired by alcohol consumption and it cannot be said that the verdict was not supported by legally sufficient evidence (e.g. People v Lizzio, 178 AD2d at 742). With respect to the remaining charge, the defense not only failed to object below to the legal sufficiency of the proof (CPL 470.05 [2]; People v Gray, 86 NY2d 10, 19 [1995]; People v Udzinski, 146 AD2d 245, 250 [1989]) but indicated that there would be no attempt to rebut the People’s proof thereon. We are satisfied that defendant’s admissions and the evidence of vehicular damage established the elements of the offense beyond a reasonable doubt, and in the exercise of our factual review power we find that both verdicts were not contrary to the weight of the evidence (People v Bleakley, 69 NY2d 490, 495 [1987]).
Rudolph, PJ., Angiolillo and Lippman, JJ., concur.