[908 NYS2d 804]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM E. LENT, JR., Appellant.

Supreme Court, Appellate Term, Second Department, July 16, 2010

**APPEARANCES OF COUNSEL**

*Anne Marie Caradonna,* Sayville and *Sweeney & Sweeney,* Melville, for appellant. *Kathleen M. Rice, District Attorney,*

Mineola (*Donald Berk* and *Tammy J. Smiley* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

Ordered that the judgments of conviction are affirmed.

Following a jury trial, defendant was convicted of driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2]) and speeding (Vehicle and Traffic Law § 1180 [b]). At the trial, a Nassau County police officer testified that he was trained to estimate the speed of a moving vehicle and that, on March 11, 2007 at 4:58 A.M., he observed defendant traveling at about 90 miles per hour on the Long Island Expressway. The officer confirmed that estimate by a laser device and by his speedometer during the subsequent pursuit. The officer stopped defendant and noted that defendant exhibited several indicia of intoxication. Defendant admitted having had "one drink." The officer administered a series of field sobriety tests, all of which defendant failed. The officer arrested defendant at 5:23 A.M. and transported defendant to the Nassau County Police Department's Central Testing Unit, where defendant again failed a series of sobriety tests and consented to a chemical test of the alcohol content of his blood. The test, conducted at 7:24 A.M. by an Intoxilyzer 5000 EN breath test instrument, produced a reading of .11% by weight.

Defendant sought to introduce expert testimony as to the range of individual variation within the general population from the 2,100:1 "conversion" or "partition" ratio used in the Intoxilyzer 5000 EN to derive the concentration of alcohol in a person's blood from the quantity of alcohol vapor detected in a breath sample. Defendant did not challenge the instrument's reliability, but sought to lay the foundation for a jury argument that defendant's individual ratio might differ so significantly from the mean as to diminish the evidentiary weight to be accorded the test results. The District Court precluded the evidence, apparently on relevancy grounds.

The scientific accuracy of "[b]reath analysis instruments" approved by the New York State Department of Health (Department of Health Regulations [10 NYCRR] § 59.4 [a]; *see* Vehicle and Traffic Law § 1194 [4] [c]) is "no longer open to question" (*People v Alvarez*, 70 NY2d 375, 380 [1987], quoting *People v Mertz*, 68 NY2d 136, 148 [1986]), and the Intoxilyzer 5000 EN

is one of those approved instruments (Department of Health Regulations [10 NYCRR] § 59.4 [b]). A consequence of the general acceptance in the scientific community of the reliability of the results of blood alcohol testing by such instruments (*People v Hughes*, 59 NY2d 523, 537 [1983]) is that it is no longer necessary to establish, through foundational evidence, the reliability of the test results by means of expert testimony (*People v Hampe*, 181 AD2d 238, 240 [1992]). The presumption of reliability extends to the scientific premises underlying the operation of breath test instruments, including the validity of the partition or conversion ratio.

■ Although the fact, if not the magnitude, of conversion ratio variability is well established (*e.g. People v McNeal*, 46 Cal 4th 1183, 1191-1192, 210 P3d 420, 424-425 [2009]; *cf. People v Donaldson*, 36 AD2d 37 [1971]; *see generally* David Polin, Annotation, *Challenges to Use of Breath Tests for Drunk Drivers Based on Claim that Partition or Conversion Ratio between Measured Breath Alcohol and Actual Blood Alcohol is Inaccurate*, 90 ALR4th 155), as a general rule, evidence of such variability may not be introduced to challenge the reliability of instruments that determine blood alcohol levels from the analysis of breath samples (*e.g. People v McNeal*, 46 Cal 4th at 1192, 210 P3d at 425; *Guthrie v Jones*, 202 Ariz 273, 43 P3d 601 [2002]; *State v Hanks*, 172 Vt 93, 772 A2d 1087 [2001]; *Morris v State, Dept. of Admin., Div. of Motor Vehs.*, 186 P3d 575, 581 [Alaska 2008]; *State v Hardesty*, 136 Idaho 707, 39 P3d 647 [2002]). In the District Court, defense counsel, conceding that "[n]obody knows what [defendant's] ratio was," argued, in effect, that the mere theoretical possibility that defendant's personal conversion ratio so differed from the ratio employed by the Intoxilyzer 5000 EN as to meaningfully diminish the weight to be accorded the test results. Therefore, counsel argued, evidence of conversion ratio variability within the population should be admissible without proof of defendant's own conversion ratio. We disagree.

Absent proof by defendant that his personal conversion ratio differs so significantly from the mean as to materially undermine the weight to be given the test result, it cannot be said that the test so erroneously recorded his blood alcohol content as to render his conviction wrongful. "Evidence, although technically relevant, will be excluded if it is too slight, remote, or conjectural to have any legitimate influence in determining the fact in is-

sue" (Prince, Richardson on Evidence § 4-103, at 137-138 [Farrell 11th ed]; *see e.g. People v Petty*, 7 NY3d 277, 286 [2006]; *People v Mateo*, 2 NY3d 383, 424-425 [2004]). Thus, the District Court did not abuse its discretion in rejecting defendant's offer of proof which, while involving matters not theoretically irrelevant, was not shown to have probative value above the "slight, remote, or conjectural" and amounted to little more than an invitation to speculate.

Defendant also argues that *Melendez-Diaz v Massachusetts* (557 US —, 129 S Ct 2527 [2009]) overruled this court's determination in *People v Lebrecht* (13 Misc 3d 45 [App Term, 9th & 10th Jud Dists 2006]) that a defendant's confrontation rights (*see Crawford v Washington*, 541 US 36 [2004]) are not violated in a driving while intoxicated prosecution when the trial court admits, as business records (*see* CPLR 4518), certified copies of the simulator solution certification and the calibration/maintenance documentation in relation to the breath test instrument, offered as part of the foundation requirements for the admission of the blood alcohol test results, without the preparer of those records being available for cross-examination (*see also People v Stevenson*, 21 Misc 3d 128[A], 2008 NY Slip Op 51933[U] [App Term, 1st Dept 2008]; *People v Fisher*, 9 Misc 3d 1121[A], 2005 NY Slip Op 51726[U] [Rochester City Ct 2005]; *People v Kanhai*, 8 Misc 3d 447 [Crim Ct, Queens County 2005]).

In *Melendez-Diaz*, the Supreme Court concluded that the Commonwealth of Massachusetts had denied the defendant his Sixth Amendment confrontation rights by permitting a certified laboratory report of the analysis of a substance seized from the defendant to be offered into evidence without the necessity of presenting the analyst as a witness. Noting that "there is little reason to believe that confrontation will be useless in testing [an analyst's] honesty, proficiency, and methodology" (*Melendez-Diaz*, 557 US at —, 129 S Ct at 2538), the Supreme Court excluded from the reach of the business records rule the product of "regularly conducted business activity [the purpose of which] is the production of evidence for use at trial" (*id.*) as inherently testimonial. However, the Court also recognized that there exist

> "[b]usiness and public records [which] are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of

establishing or proving some fact at trial—they are not testimonial" (557 US at —, 129 S Ct at 2539-2540).

Although explicitly declining to offer a "comprehensive definition" of what is testimonial (541 US at 68), the Court in *Crawford* identified certain types of evidence as having a "common nucleus" of "testimoniality" (541 US at 52): "typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" which includes "*ex parte* in-court testimony" and "extrajudicial statements" such as "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" (541 US at 51 [internal quotation marks and citation omitted]; *but see Davis v Washington*, 547 US 813, 828 [2006]). In *Lebrecht*, we reasoned that *Crawford* did not apply because the calibration and maintenance documents

> "were prepared in the course of the certifier's routine official duties and [were] systematically produced in the conduct of [police department] business to fulfill an official mandate that the machines be maintained in working order. Although prepared, to an extent, in recognition of their necessity in the event of litigation and constituting a part of the foundational predicate for the admission of BAC test evidence, the certificates did not result from structured police questioning, they were not created at official request to gather incriminating evidence against a particular individual, and they did not constitute a direct accusation of an essential element of any offense. Proof that a BAC testing machine functions properly may exonerate as well as incriminate and represents merely the application of an objective procedure which does not involve the exercise of judgment and discretion, expressions of opinion, and making conclusions" (13 Misc 3d at 49 [internal quotation marks and citations omitted]).

In *People v Brown* (13 NY3d 332, 340 [2009]), the Court of Appeals invoked the *Melendez-Diaz* dictum (557 US at — n 1, 129 S Ct at 2532 n 1) that not everyone "whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case" to underscore its

conclusion that "merely machine-generated graphs, charts and numerical data" produced without any "conclusions, interpretations or comparisons" involving "subjective analysis" are nontestimonial within the meaning of *Crawford*. In *Brown*, the Court identified criteria relevant to determining if a record is testimonial,

> "(1) whether the agency that produced the record is independent of law enforcement; (2) whether it reflects objective facts at the time of their recording; (3) whether the report has been biased in favor of law enforcement; and (4) whether the report accuses the defendant by directly linking him or her to the crime" (13 NY3d at 339-340; *see also People v Rawlins*, 10 NY3d 136, 151 [2008] ["our task in each case must be to evaluate whether a statement is properly viewed as a surrogate for accusatory in-court testimony"]).

Under this formulation, the records at issue herein remain nontestimonial for purposes of the Confrontation Clause.

Concededly, police department personnel responsible for calibrating and maintaining breath test machines are not "independent of law enforcement," and the business records rule may not be employed to shield from scrutiny records "calculated for use essentially in the court, not in the business" (*Melendez-Diaz*, 557 US at —, 129 S Ct at 2538). Further, while in New York "law enforcement agencies constitute businesses for purposes of [CPLR 4518 (a)]" (*Rawlins*, 10 NY3d at 149, quoting *People v Guidice*, 83 NY2d 630, 635 [1994]), business records lose their exemption from the hearsay bar "if the regularly conducted business activity is the production of evidence for use at trial" (*Melendez-Diaz*, 557 US at —, 129 S Ct at 2538). The test is first whether the documents qualify as business records and then whether they are also nontestimonial in the *Crawford/ Melendez-Diaz* sense, whatever the state law definition of business records and the specifics of the foundation rules necessary to admit such records may be. While the purpose of accurate breath-alcohol measuring machines is to produce evidence that may be used at trial, the calibration and maintenance documents in relation to the machines are not testimonial. Calibration and maintenance records are created "in recognition of their necessity in the event of litigation and constitut[e] a part of the foundational predicate for the admission of BAC test evidence" (*Lebrecht*, 13 Misc 3d at 49). However, such records do not result from structured police questioning, they are not cre-

ated in response to any effort at gathering incriminating evidence against a particular accused, they reflect objective facts without discretionary aspect, they do not involve opinions or conclusions relevant to a particular investigation, and they do not constitute "a direct accusation of an essential element of any offense" (*id.*; *see People v Pacer*, 6 NY3d 504, 510 [2006]). Additionally, such records satisfy the *Rawlins* criteria to the extent that they were not "prepared in a manner resembling ex parte examination" (10 NY3d at 156). In light of the purpose of creating the documents, there is no reason to suspect a preparer's "motive" to accomplish anything other than "to fulfill [the] official mandate that the machines be maintained in working order" (*Lebrecht*, 13 Misc 3d at 49; *see Melendez-Diaz*, 557 US at —, — n 1, 129 S Ct at 2539-2540, 2532 n 1 [documentation "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . (is) not testimonial"; "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records"]; *see also* Joseph McCormack, *Does Melendez-Diaz Bar the Admission of the Calibration Reports of DWI Breath Testing Instruments?*, Empire State Prosecutor [Fall 2009]; *see generally United States v Forstell*, 656 F Supp 2d 578 [ED Va 2009]; *People v Harvey*, 26 Misc 3d 1218[A], 2010 NY Slip Op 50167[U] [Just Ct, Town of Lockport 2010]; *People v DiBari*, 26 Misc 3d 1220[A], 2010 NY Slip Op 50191[U] [Just Ct, Town of North Castle 2010]; *People v Kelly*, 26 Misc 3d 1205[A], 2009 NY Slip Op 52664[U] [Crim Ct, NY County 2009]; *but cf. People v Carreira*, 27 Misc 3d 293 [Watertown City Ct 2010]; *People v Heyanka*, 25 Misc 3d 978 [Suffolk Dist Ct 2009]).

■ Defendant's argument that the blood alcohol test result was inadmissible because the presence of numerous persons moving between the observing police officer, seated 5 to 10 feet from defendant, prevented the officer from maintaining a "continuous observation" of defendant for the 15-minute period prior to the test, is also without merit. Proof of the requisite "continuous observation" (Department of Health Regulations [10 NYCRR] § 59.5 [b]) is not a predicate condition to admit breathalyzer test results; rather, it "goes only to the weight to be afforded the test result, not its admissibility" (*People v Schuessler*, 14 Misc 3d 30, 32 [App Term, 9th & 10th Jud Dists 2006]; *see People v Terrance*, 120 AD2d 805, 807 [1986]; *People v Jones*, 10 Misc 3d 413, 417 [Dutchess County Ct 2005]). Moreover, the observation requirement is not strictly construed.

"Neither the statute, the regulations nor the exercise of reason call for [a] constant vigil" (*People v Williams*, 96 AD2d 972, 973 [1983], *revd on other grounds* 62 NY2d 765 [1984]; *e.g. People v McDonough*, 132 AD2d 997, 998 [1987]), and defendant does not claim that during the 15-minute period prior to the test, he placed anything in his mouth or that any other event occurred that implicated the test's accuracy (*see Lebrecht*, 13 Misc 3d at 51).

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342, 348-349 [2007]), we must accord great deference to the jury's opportunity to view the witnesses, hear the testimony and observe demeanor (*People v Romero*, 7 NY3d 633, 644 [2006]; *People v Bleakley*, 69 NY2d 490, 495 [1987]).

> "[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the [trier of fact] was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Otway*, 71 AD3d 1052, 1053 [2010], quoting *People v Danielson*, 9 NY3d at 348).

Upon our review of the record, we are satisfied that the verdict was not against the weight of the evidence.

We have considered defendant's remaining contentions and find them unpreserved or without merit (*see People v Atkins*, 85 NY2d 1007, 1008-1009 [1995]; *People v Kelly*, 62 NY2d 516, 521 [1984]; *People v Dory*, 59 NY2d 121, 127 [1983]; *People v Valerio*, 70 AD3d 869 [2010]; *People v Marietta*, 61 AD3d 997, 998 [2009]; *People v Norris*, 34 AD3d 501, 503 [2006]; *People v Campbell*, 7 AD3d 409, 410 [2004]; *People v Nelson*, 144 AD2d 714, 716 [1988]; *People v Stoliarov*, 21 Misc 3d 135[A], 2008 NY Slip Op 52209[U] [App Term, 9th & 10th Jud Dists 2008]). Accordingly, the judgments of conviction are affirmed.

NICOLAI, P.J., TANENBAUM and IANNACCI, JJ., concur.