[958 NE2d 538, 934 NYS2d 360]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER PORCO, Appellant.

Argued September 13, 2011; decided October 18, 2011

## APPEARANCES OF COUNSEL

*Kindlon Shanks and Associates,* Albany (*Terence L. Kindlon* and *Kathy Manley* of counsel), for appellant.

*P. David Soares, District Attorney,* Albany (*Christopher D. Horn* and *Steven M. Sharp* of counsel), for respondent.

*Janet DiFiore, District Attorney,* New York City (*Susan Axelrod* and *Morrie I. Kleinbart* of counsel), for District Attorneys Association of the State of New York, amicus curiae.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

Defendant Christopher Porco claims that his federal constitutional right to confront the witnesses against him was violated by the admission at his criminal trial of testimony that his gravely injured mother nodded affirmatively when asked by the police if he was her assailant. This occurred as medics were preparing his mother for treatment, immediately after she was discovered lying in her bed in the family home, covered with blood, suffering from severe head trauma and unable to speak because her jaw was shattered and dislocated. Even assuming, without deciding, that the testimony about the nod was constitutionally infirm, any error was harmless beyond a reasonable doubt.

Trial errors resulting in violation of a criminal defendant's Sixth Amendment right to confrontation "are considered harmless when, in light of the totality of the evidence, there is no reasonable possibility that the error affected the jury's verdict" (*People v Douglas*, 4 NY3d 777, 779 [2005], citing *People v Crimmins*, 36 NY2d 230, 240-241 [1975]). Here, overwhelming evidence placed defendant at the family home near Albany, New York, during the predawn hours of November 15, 2004, when the crimes for which he was convicted (the murder of his father and the attempted murder of his mother while they slept) were committed there.

This evidence included, among many other things, video recordings from traffic cameras in Rochester, New York, where defendant was attending the University of Rochester, which captured images of a yellow Jeep Wrangler as it headed in the direction of the New York State Thruway at 10:36 P.M. on November 14, 2004, and headed back toward the campus at 8:30 A.M. on November 15, 2004, and expert testimony that this vehicle was of the same class and displayed characteristics unique to the jeep that defendant drove; expert testimony that defendant was in the 0.39% of North Americans whose mitochondrial DNA profile matched the profile from a sample extracted from a toll ticket handed out at Thruway exit 46 in Rochester at 10:45 P.M. on November 14, 2004, and handed in at Thruway exit 24 in Albany at 1:51 A.M. on November 15, 2004; and evidence that at 2:14 A.M., 23 minutes later, the burglary alarm system at the family home (located 9.3 miles from exit 24) was turned off by someone using a master code known only to the two victims, defendant, his brother, a naval officer stationed in South Carolina at the time, and possibly defendant's uncle and a female family friend, who were not in any way implicated. And a neighbor, a construction superintendent, testified that he observed a yellow Jeep Wrangler in the driveway of the family home around 3:45 or 4:00 A.M. on November 15, 2004, as he was driving from his residence on the same street to the site of the construction project he was supervising at the time, which was about 2 hours and 20 or 30 minutes away.

The jury also learned that defendant on five occasions claimed to have been planning to or to have slept in the lounge of his dormitory on November 14-15, 2004, but seven fellow students, who were in the lounge for various extended and overlapping periods of time between 10:30 P.M. on November 14, 2004, and 3:30 A.M. on November 15, 2004, testified that they did not see him there; that defendant was first observed on campus on November 15, 2004 at 8:45 A.M., about one mile from where his jeep was later found parked, running toward his dormitory, and was seen in the lounge at 9:30 A.M.; and that although defendant told several friends that he had tried to contact his parents at home or at work by telephone on November 15, 2004, the telephone records did not support this claim, and his father's secretary testified that she did not receive a telephone call from defendant, although he told a friend that he had spoken with her. There was also considerable evidence that defendant repeatedly lied to his parents about his mounting financial and academic problems, and that his parents had caught on.

Further, the jury was presented with evidence, properly admitted by the trial court with a limiting instruction, of a seeming break-in at the family home during the night of November 18-19, 2002 while defendant was home from college for the Thanksgiving holiday.* On this occasion, two laptop computers were stolen. Defendant conceded (by stipulation when the recovered computer was admitted into evidence) that he sold one of these computers on eBay to a California resident 20 days later. The proof of this staged break-in was unique and highly probative of defendant's identity as the perpetrator of the crimes for which he was being tried, where the family home was likewise staged to make it appear as though his parents had been victimized by a stranger—e.g., the keypad for the burglary alarm system, installed after the November 2002 incident, was smashed although the alarm had, in fact, been turned off by someone who knew the master code. But as the jury learned (and the perpetrator obviously did not know), it was not possible to disarm the system or obliterate the record of the master code's use (which was stored in a control panel in the basement) by damaging the keypad.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Judge GRAFFEO taking no part.

Order affirmed in a memorandum.

---

* The People unsuccessfully sought to admit evidence of three reported burglaries predating November 15, 2004, to which defendant was connected by the police only after that date—two at the family home (including the November 18-19, 2002 incident), and one at the veterinary hospital where he had worked.