OPINION OF THE COURT
Memorandum.
Ordered that the judgment of conviction is reversed, on the law, and the matter is remitted to the Criminal Court for a new trial.
On January 2, 2008, the People charged defendant, in an information, with aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a]), driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]), driving while impaired (Vehicle and Traffic Law § 1192 [1]), reckless driving *22 (Vehicle and Traffic Law § 1212), failing to obey a traffic control device (Vehicle and Traffic Law § 1110), and failing to signal when turning (Vehicle and Traffic Law § 1163 [d]). The information alleged that, on January 2, 2008 at about 12:30 a.m., on 86th Street in Kings County, defendant’s automobile was observed “swerving back and forth across multiple lanes of traffic.” After committing additional traffic infractions, defendant was stopped, whereupon a police officer observed defendant with numerous indicia of intoxication and arrested defendant. A chemical test of defendant’s breath revealed a blood alcohol content of .25 of one percentum by weight.
Prior to trial, the People announced that the operator of the Intoxilyzer 5000 instrument used to measure defendant’s blood alcohol content had retired out of state and was not presently available to testify, and that, in the operator’s place, they would offer the testimony of another officer who was certified to operate the Intoxilyzer 5000 device and who was present at defendant’s test, operating a video camera. Defendant objected to the admission of the test results absent an opportunity to cross-examine the tester. The Criminal Court overruled the objection, and, at the trial, the witness testified to his credentials, his experience administering Intoxilyzer 5000 tests, and his observations of defendant’s test. The jury convicted defendant of the two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]) and acquitted defendant of the remaining counts.
On appeal, defendant argues (1) that the admission of the testimony of the witness who had observed the test violated his rights under the Confrontation Clause to confront the tester (see Bullcoming v New Mexico, 564 US —, —, 131 S Ct 2705, 2717 [2011]; Crawford v Washington, 541 US 36 [2004]); (2) that the prosecutor’s summation remarks denied him a fair trial; and (3) that the acquittal of the charge of driving while impaired is repugnant to his conviction of common-law driving while intoxicated. For the reasons that follow, the judgment convicting defendant of Vehicle and Traffic Law § 1192 (2) and (3) is reversed and these counts are remitted to the Criminal Court for a new trial.
Evidence is testimonial when its primary purpose is to “establish or prove past events potentially relevant to later criminal prosecution” (Davis v Washington, 547 US 813, 822 [2006]) and takes the form of “an out-of-court substitute for trial testimony” (Michigan v Bryant, 562 US 344, —, 131 S Ct 1143, 1155 [2011]). Documents “created solely for an evidentiary *23 purpose . . . made in aid of a police investigation” are testimonial (Bullcoming, 564 US at —, 131 S Ct at 2717 [internal quotation marks and citation omitted]; see People v Pealer, 20 NY3d 447, 454 [2013] [characterizing a blood analysis laboratory report as testimonial because it was “generated for law enforcement purposes in order to establish a necessary element of the charged offenses”]; see also People v Brown, 13 NY3d 332, 340 [2009]). An Intoxilyzer 5000 test result printout is testimonial by these standards, and, normally, absent a showing of the unavailability of the tester or a prior opportunity to cross-examine the tester (Bullcoming, 564 US at —, 131 S Ct at 2713), the person who performed the test must be produced for cross-examination if the test results are to be admitted into evidence.
In Bullcoming, the Supreme Court rejected, on Confrontation Clause grounds, a state’s attempt to admit a laboratory report via the testimony of “another [laboratory] analyst who was familiar with the laboratory’s testing procedures,” because the witness “had neither participated in nor observed the test on [defendant’s] blood sample” (564 US at —, 131 S Ct at 2709). In a concurring opinion, Justice Sotomayor emphasized that “[i]t would be a [very] different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results” (564 US at —, 131 S Ct at 2722). However, the standards to be applied to determine whether the expertise of the proposed substitute witness who had observed the test and his or her personal knowledge of the test at issue is sufficient to permit meaningful cross-examination remain unclear (see Flournoy v Small, 681 F3d 1000, 1005 [9th Cir 2012] [“the degree of proximity the testifying witness must have to the scientific test” is an “unresolved area( )”]; Meras v Sisto, 676 F3d 1184, 1192 [9th Cir 2012, Bea, J., concurring] [the issue of the qualifications of a substitute witness is an open one, as Bullcoming expressly declined to “ ‘address what degree of involvement... is sufficient’ ” (quoting Bullcoming, 564 US at —, 131 S Ct at 2722)]; compare United States v Hernandez, 479 Fed Appx 636, 641 [5th Cir 2012], with People v Umpierre, 37 Misc 3d 775 [Sup Ct, Bronx County 2012]).
In general, forensic laboratory procedures, which may involve the application of expertise involving the handling of the evidence to be tested, preparing an instrument to perform an analysis, the procedures followed to conduct the analysis, and the interpretation of test results, represent a significant amount of *24 information “meet for cross-examination” (Bullcoming, 564 US at —, 131 S Ct at 2714; see also Melendez-Diaz v Massachusetts, 557 US 305, 311 n 1 [2009] [“chain of custody, authenticity of the sample, (and the) accuracy of the testing device” are salient matters for authenticating test results]). However, in the case of an Intoxilyzer 5000 breath analysis, the scope of potential cross-examination necessary to satisfy Confrontation Clause concerns is attenuated. First, “documents pertaining to the routine inspection, maintenance and calibration of breathalyzer machines are nontestimonial under Crawford and its progeny” (People v Pealer, 20 NY3d at 456; e.g. People v Cook, 111 AD3d 1169, 1170 [2013]; People v Hulbert, 93 AD3d 953 [2012]; People v Lent, 29 Misc 3d 14 [App Term, 2d Dept, 9th & 10th Jud Dists 2010]; People v Lebrecht, 13 Misc 3d 45 [App Term, 2d Dept, 9th & 10th Jud Dists 2006]). Thus, all issues relating to the determination of whether a testing device is working properly prior to the commencement of a test are resolved by certified copies of documentation relating to the inspection, maintenance and calibration of the instrument and any solutions used, the admission of which, pursuant to the business records exception to the hearsay rule, requires no testimony by those responsible for the inspections, maintenance, and calibrations (Pealer, 20 NY3d 447). While testimony regarding the procedures of the test itself must be provided by one with expertise and knowledge to satisfy a Confrontation Clause challenge, the procedures of the test itself, in this case as set forth in a 13-step “operational checklist,” such as providing information in relation to the identity of the person being tested and the time and location of the test and to other matters unrelated to ensuring the integrity of the test itself, pressing buttons when prompted, and instructing the testee to produce a breath sample, require little expertise or knowledge unique to the tester, given that the instrument self-calibrates, shuts down if the calibration fails, and will not perform the test if a testable sample is not provided.
The substitute witness, Officer Mercado, a certified and experienced Intoxilyzer 5000 operator, testified as to defendant’s condition during the requisite observation period prior to the test. He further testified that he had observed the tester proceed through the steps, from turning on the machine until a test result was produced. Although Officer Mercado did not personally operate the breathalyzer instrument, by observing the operator’s actions and listening to the machine, he could determine whether it was successfully self-calibrating. He *25 observed defendant provide three breath samples, two of which the instrument did not analyze as they were inadequate to permit accurate testing, requiring that the testing procedure be recommenced. He heard and saw nothing to indicate that the self-calibration that preceded the third breath analysis was unsuccessful, and there is no indication that Officer Mercado did not see or hear the tester’s interactions with defendant in the course of the third test. Officer Mercado personally observed the machine printing the test results, and, at the trial, he identified the printout, from personal knowledge he had acquired at the time the results had been printed, as representing the results of defendant’s test. However, Officer Mercado admitted that he had not observed whether the Intoxilyzer 5000 simulator temperature display indicated that the temperature during the test was within a proper range for testing. As such a determination is an essential part of the 13-step operational checklist, and the record does not indicate whether the Intoxilyzer 5000 device shuts itself down and will not perform the test if the temperature is outside the specified range, we are unable to agree that Officer Mercado satisfied the Bullcoming standard for the qualifications of a substitute witness, and conclude that defendant’s Confrontation Clause rights were violated. Thus, the conviction of driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2]) is reversed and a new trial ordered on that charge, at which the admission of the blood alcohol test results must rest on a proper foundation (see e.g. People v Ely, 68 NY2d 520, 527 [1986]; People v Roberts, 66 AD3d 1135, 1137 [2009]).
Defendant’s argument that his acquittal of driving while impaired (Vehicle and Traffic Law § 1192 [1]) is repugnant to his conviction of common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]; see People v Muhammad, 17 NY3d 532, 539 [2011]; People v Tucker, 55 NY2d 1, 4 [1981]) is not preserved for appellate review. Defendant did not raise the issue until after the jury was discharged when it was, by then, untimely (People v Satloff, 56 NY2d 745, 746 [1982] [a post-discharge motion failed to preserve a repugnant verdict issue for appellate review as it was, by then, “no longer possible to remedy the defect”]; People v Stahl, 53 NY2d 1048, 1050 [1981] [claim unpreserved “in consequence of the failure to register any protest concerning this issue prior to the discharge of the jury when the infirmity in the verdicts, if any, might have been remedied by resubmission to the jury for reconsideration of its *26 verdicts”]; People v Lobban, 59 AD3d 566 [2009] [same]), and we decline to address the issue in the interest of justice (cf. People v Muhammad, 17 NY3d at 540).
However, in our view, the conviction of common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) should be reversed based on the taint of the improper admission of the proof of defendant’s blood alcohol content. The analysis of the effect of erroneously admitted evidence at a trial “requires an appellate court to assess the quantum and nature of the People’s proof of guilt independent of. . . [that] evidence and the causal effect, if any, that the introduction of that evidence had on the factfinder’s verdict” (People v Wells, 21 NY3d 716, 718 [2013]). “Trial errors resulting in violation of [the] . . . Sixth Amendment right to confrontation ‘are considered harmless when, in light of the totality of the evidence, there is no reasonable possibility that the error affected the jury’s verdict’ ” (People v Porco, 17 NY3d 877, 878 [2011], quoting People v Douglas, 4 NY3d 777, 779 [2005]; see also People v Crimmins, 36 NY2d 230, 240-241 [1975]). In light of the highly prejudicial effect of the improper admission of the high blood alcohol test result and the otherwise less than overwhelming proof of guilt, we find that this conviction must also be reversed and a new trial ordered on that charge.
In light of the foregoing, we need not address defendant’s remaining contention.
Accordingly, the judgment of conviction is reversed and the matter is remitted to the Criminal Court for a new trial.
Weston, J.P, Aliotta and Elliot, JJ., concur.