*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 23, 2017                 522707
_____

CHRISTOPHER PORCO,
                    Appellant,

        v                                   MEMORANDUM AND ORDER

LIFETIME ENTERTAINMENT
    SERVICES, LLC,
                    Respondent.
_____

Calendar Date:  January 18, 2017

Before:  McCarthy, J.P., Garry, Lynch, Devine and Mulvey, JJ.

_____

        Christopher Porco, Dannemora, appellant pro se.

        David A. Schulz, New York City, for respondent.

        Davis Wright Tremaine, LLP, New York City (Robert Balin of
counsel), for The Reporters Committee for Freedom of the Press
and others, amici curiae.

_____

McCarthy, J.P.

        Appeal from an order of the Supreme Court (Muller, J.),
entered April 20, 2015 in Clinton County, which granted
defendant's motion to dismiss the complaint.

        In 2006, plaintiff was convicted of the murder of his
father and the attempted murder of his mother (see generally
People v Porco, 71 AD3d 791, 792 [2010], affd 17 NY3d 877
[2011]).  In December 2012, plaintiff discovered that defendant
intended to broadcast a film entitled "Romeo Killer: The
Christopher Porco Story" (hereinafter the film).  On January 29,
2013, plaintiff commenced this action pursuant to Civil Rights

Law §§ 50 and 51, seeking a preliminary injunction to prevent the airing of the film. Plaintiff's subsequent motion for a temporary restraining order to prevent the film's broadcast pending a decision on his motion for a preliminary injunction was granted by Supreme Court. Defendant appealed and this Court granted emergency relief to defendant by vacating the temporary restraining order pending an appeal on the merits and, as planned, the film was nationally televised on March 23, 2013. Supreme Court's order was ultimately reversed and vacated by this Court (116 AD3d 1264 [2014]). Thereafter, Supreme Court granted defendant's motion to dismiss the complaint for failure to state a cause of action. Plaintiff now appeals, and we reverse.

On a motion pursuant to CPLR 3211 (a) (7) to dismiss a complaint for failure to state a cause of action, this Court "must afford the complaint a liberal construction, accept as true the allegations contained therein, accord the plaintiff the benefit of every favorable inference and determine only whether the facts alleged fit within any cognizable legal theory" (He v Realty USA, 121 AD3d 1336, 1339 [2014] [internal quotation marks and citations omitted], lv dismissed and denied 25 NY3d 1018 [2015]). New York provides a limited statutory right of privacy. Pursuant to Civil Rights Law § 50, it is a misdemeanor when a firm or corporation "uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such a person" (Civil Rights Law § 50). Similarly, Civil Rights Law § 51 allows a plaintiff to "maintain an equitable action in the supreme court of this state against the [firm or corporation] so using his [or her] name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use" (Civil Rights Law § 51). The Legislature intended for this statutory protection of privacy to be "strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person" (Finger v Omni Publs. Intl., 77 NY2d 138, 141 [1990]), and these statutory provisions "do not apply to reports of newsworthy events or matters of public interest" (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d 436, 441 [2000], cert denied 531 US 818 [2000]).

The scope of the newsworthiness exception to liability, however, must be construed in accordance with binding Court of Appeals precedent.  The Court of Appeals has held that statutory liability applies to a materially and "substantially fictitious biography" (Spahn v Julian Messner, Inc., 18 NY2d 324, 329 [1966], vacated 387 US 239 [1967], adhered to on remand and rearg 21 NY2d 124 [1967], appeal dismissed 393 US 1046 [1969]) where a "knowing fictionalization" amounts to an "all-pervasive" use of imaginary incidents (Spahn v Julian Messner, Inc., 21 NY2d 124 127-129 [1967], appeal dismissed 393 US 1046 [1969]) and a biography that is "nothing more than [an] attempt[] to trade on the persona" of the plaintiff (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d at 446; see generally Lerman v Flynt Distributing Co., Inc., 745 F2d 123, 131-132 [2d Cir 1984]).  When it most recently addressed the aforementioned principles, the Court of Appeals explained that a work "may be so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception" (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d at 446).  As further binding Court of Appeals precedent makes clear, the fact that a film revolves around a "true occurrence" (id. at 445), such as a rescue of passengers from a shipwreck, does not invoke the newsworthiness exception in the event that the entire account remains "mainly a product of the imagination" (Binns v Vitagraph Co. of Am., 210 NY 51, 56 [1913]).  Finally, the Court of Appeals has directly passed on the issue of whether extending liability in the aforementioned manner violated constitutional protections of freedom of speech and has found no such violation (see Spahn v Julian Messner, Inc., 21 NY2d at 129).

Thus, the issue before this Court is whether plaintiff's complaint, when given the benefit of every favorable inference, alleges facts suggesting that defendant knowingly produced a materially and substantially fictitious biography that violates the statutory right of privacy.[1]  Turning to the record,

_____

[1]  The Court of Appeals has made clear that the aforementioned line of cases dealing with "invented biographies of plaintiffs' lives" relate to "strikingly different" scenarios from those cases where the Court has addressed "the unauthorized,

plaintiff alleges that the film is a "knowing and substantially fictionalized account" about plaintiff "and the events that led to his incarceration," and that it appropriates his name without his consent "for purposes of profit." In support of this claim, plaintiff offered a letter written by a producer associated with the film to his mother before the film's release. The producer indicated that she was involved in the production of a documentary intended to accompany the film that the producer "hope[d] . . . [would] provide the platform for [the mother's] family to state their position in a non-fictional program after the [film] airs." Viewing the producer's correspondence in the light most favorable to plaintiff and according plaintiff the benefit of every favorable inference, it is reasonable to infer that the producer indicated that the film was considered to be a fictitious program. Considering the foregoing and the standard of review on a motion to dismiss, we cannot say that plaintiff has failed to sufficiently allege the same degree of fictionalization or the same degree of defendant's knowledge of such fictionalization as that which has been found to violate the statutory right to privacy without running afoul of constitutional protections of speech (see Spahn v Julian Messner, Inc., 21 NY2d at 129; see also Binns v Vitagraph Co. of Am., 210 NY at 56).[2] Accordingly, defendant's motion to dismiss for

_____

and allegedly false and damaging, use of plaintiffs' photographs to illustrate newsworthy articles" (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d at 446). The Court of Appeals has also offered the guidance that courts, in addressing alleged violations of the statutory right of privacy, ought to resort to precedent "directly on point" for the governing rules, which, here, are cases such as Spahn v Julian Messner, Inc. (21 NY2d 124 [1967], supra) and Binns v Vitagraph Co. of Am. (supra) that regard biographies (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d at 446).

[2] We emphasize that, at this procedural stage, the film is not before this Court, and "[w]hether an item is newsworthy depends solely on [its] content" (Messenger v Gruner + Jahr Print. & Publ., 94 NY2d at 442 [internal quotation marks and citation omitted]).

failure to state a cause of action should have been denied.

Garry, Lynch, Devine and Mulvey, JJ., concur.


ORDERED that the order is reversed, on the law, with costs, and motion denied.


ENTER:

Robert D. Mayberger
Clerk of the Court