THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
PHILLIP J. HAMPE, Appellant.

Third Department, July 16, 1992

### APPEARANCES OF COUNSEL

*Paul J. Connolly* for appellant.

*Roger H. Mallery, District Attorney (J. Russell Langwig, III,* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

During the evening of June 18, 1989, Dawn Dennis, the secretary-treasurer of the Conservation Club of Sharon Springs in Schoharie County, observed a large grey automobile with a single driver/occupant strike the side of the Conservation Club building. Shortly thereafter, the vehicle left the accident scene and Dennis followed it in her truck for a sufficient time to get the license number, after which she reported to the State Police the identifying information of the vehicle and that it was being driven southbound on State Route 10 toward the Town of Richmondville. State Trooper Walter Sparks left the State Police substation at Warnerville to intercept the vehicle and came upon it parked partly in an intersection on the highway with the motor running. Defendant was observed standing at the side of the vehicle urinating. Sparks instructed defendant to stay where he was so that the patrol car could be turned around and parked behind him. Sparks then observed defendant turn the motor off and place the ignition keys in his pocket. Defendant smelled strongly of alcohol. In response to Sparks' questions, defendant initially denied having driven the vehicle or being involved in any accident. However, when Sparks announced that he detected the smell of alcohol on him and intended to put him through field sobriety testing, defendant admitted being the driver.

Following the field sobriety testing, Sparks advised defendant that he was under arrest and brought him to the State Police substation where, upon defendant's consent, Sparks administered a breath test for his blood alcohol level with a

device known as the BAC Verifier, manufactured by Verax Systems Inc. The BAC Verifier is one of several devices utilizing infrared energy absorption rates to measure the quantity of ethyl alcohol in the breath of a human subject *(see, e.g., People v Summa,* 140 Misc 2d 763; *People v Gallagher,* 132 Misc 2d 195; *People v Flynn,* 129 Misc 2d 176; *People v Jones,* 118 Misc 2d 687).* Sparks had previously been issued a permit to operate the device by the State Department of Health (hereinafter DOH) pursuant to Vehicle and Traffic Law § 1194 (4) (c). The test result disclosed a blood alcohol level of .22%. Defendant was subsequently indicted for two counts of driving while intoxicated as a felony *(see,* Vehicle and Traffic Law § 1192 [2], [3]; § 1193 [1] [c]). He appeals from his conviction on both counts following a jury trial.

■ Defendant's first point for reversal is that the test results of the BAC Verifier should not have been received in evidence because of the absence of any expert testimony establishing the accuracy and reliability of the device (citing, *People v Campbell,* 73 NY2d 481).* We disagree. The requirement of expert proof of the accuracy and reliability of a particular blood alcohol test for admissibility of the test results is actually a particular application of the general evidentiary rule that scientific evidence will only be admitted "if the procedure and results are generally accepted as reliable in the scientific community" *(People v Hughes,* 59 NY2d 523, 537). With respect to testing by standard breathalyzer devices, New York courts have concluded that general acceptance by the scientific community had been sufficiently established so as to obviate the necessity of submitting evidence of the reliability of the test in every case *(see, People v Campbell, supra,* at 484; *People v Donaldson,* 36 AD2d 37, 40). In our view, the general acceptance of the reliability and accuracy of the test results of the BAC Verifier, sufficient to dispense with the foundational evidence thereof through expert testimony, was established by reason of the specific inclusion of the BAC Verifier in the list of breath-testing instruments approved by DOH in regulations promulgated pursuant to Vehicle and Traffic Law § 1194 (4) (c) *(see,* 10 NYCRR 59.4 [b] [19] [i]).

Originally enacted in 1986 *(see,* L 1986, ch 876, amending Vehicle and Traffic Law former § 1194 [9]), Vehicle and Traffic

---

* Defendant does not challenge the sufficiency of the evidence to establish the two other foundational elements for admissibility of the test results, i.e., "that [the device] was working properly when the test was performed and that the test was properly administered" *(People v Campbell, supra,* at 484).

Law § 1194 (4) (c) provides that DOH "shall issue and file rules and regulations approving satisfactory techniques or methods of conducting chemical analyses of a person's blood, urine, breath or saliva". The legislative intent was to give DOH definitive authority to approve tests for determining blood alcohol content for Vehicle and Traffic Law enforcement purposes *(see,* Assembly Mem in Support; Letter of Counsel for Dept of Health to Governor's Counsel, Governor's Bill Jacket, L 1986, ch 876). The regulations further indicate that the BAC Verifier is on the *"Conforming Products List of Evidential Breath Measurement Devices* * * * established by the U.S. Department of Transportation/National Highway Traffic Safety Administration" (10 NYCRR 59.4 [b]), meeting criteria of, *inter alia,* an accuracy of within at least plus or minus .01% weight per volume *(see,* 10 NYCRR 59.4 [a] [3]). Absent the submission of evidence casting doubt upon the accuracy or reliability of the BAC Verifier test, it is our conclusion that, consistent with the purpose of Vehicle and Traffic Law § 1194 (4) (c), the device's acceptance by DOH and the Federal Department of Transportation/National Highway Traffic Safety Administration is sufficient to dispense with expert testimony of the accuracy and reliability of the test in establishing a foundation for the admissibility of BAC Verifier test results. Thus, we find that no error was committed in receiving the BAC Verifier blood alcohol content test results here.

The remaining issue is whether County Court erred in finding that defendant was not in custody when, in response to Sparks' questioning before any *Miranda* warnings were given, he admitted having been the driver of the vehicle. Upon our review of the record of the hearing, we agree with the suppression court that Sparks' conduct in merely directing defendant to remain where he was while Sparks turned around and parked his patrol car and in advising defendant that he detected the smell of alcohol and intended to administer field sobriety tests was insufficient to convert the questioning from being part of a routine investigative traffic stop into custodial interrogation. We find the proof here closer to that in *Berkemer v McCarty* (468 US 420) and *People v Brown* (104 AD2d 696) than to *People v Norton* (135 AD2d 984), relied upon by defendant. Even were we to hold that defendant's admission to Sparks that he operated the vehicle should have been suppressed, its introduction into evidence does not require reversal. The other evidence showing defendant to have been the driver was overwhelming, i.e., Dennis' observation of

only a single driver/occupant when the vehicle struck the Conservation Club building and drove from there for several miles south on Route 10, the testimony of the vehicle's owner that only defendant had another ignition key, Sparks' observations when he came upon the vehicle on the road to Warnerville, and the fact that defendant later personally made payment to the Conservation Club as the one who caused the damage by driving the vehicle into the side of the club's building. Thus, any error in introducing defendant's admission to Sparks was harmless beyond a reasonable doubt (see, People v Sanders, 56 NY2d 51, 66-67; People v Krom, 91 AD2d 39, 44-45, affd 61 NY2d 187).

MIKOLL, J. P., MERCURE, CREW III and HARVEY, JJ., concur.

Ordered that the judgment is affirmed.