OPINION OF THE COURT
Richard Lee Price, J.
The defendant is charged with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3], [1]) and unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]) and moves by oral application, supplemented with a written memorandum of law, to preclude the People from introducing at trial any testimony or evidence that alcohol vapors caused the Intoxilyzer 5000 EN to experience an ambient air failure as scientifically unreliable, and from qualifying Intoxicated Driver Testing Unit (IDTU) Police Officer Edwards as an expert in the scientific operation of the Intoxilyzer 5000 EN.[1]
Opposing defendant’s application, the People filed a memorandum arguing that it should be summarily denied because the scientific reliability of the Intoxilyzer 5000 is a well-settled issue and no longer open to debate. The People further claim that based upon Officer Edwards’ training and experience in operating the Intoxilyzer 5000 EN, he is qualified to testify as an expert in its functionality, and should, in any event, be permitted to testify as to the scientific reliability of the basis and cause of an ambient air failure.
*309 Procedural History and Findings of Fact Defendant’s application was timely made at the conclusion of the People’s opening statement to the jury, in which they first announced their intention to adduce testimony at trial that alcohol vapors emanating from the defendant’s body caused the Intoxilyzer 5000 EN to experience an ambient air failure. Because of the apparent uniqueness of the People’s theory, this court ordered a hearing “on both the scientific reliability of ambient air failure as a cause of the intoxilyzer’s failure to obtain a reading and whether Officer Edwards is qualified to testify to it.”[2] After conducting that hearing on March 2, 2009, this court granted defendant’s motion.[3] This decision expands the written decision rendered on March 3, 2009.
At the hearing, the People called one witness, IDTU Police Officer Edwards, who is affiliated with the New York City Police Department’s Highway Patrol. Officer Edwards stated that he received a one-week training course in the use of the Intoxilyzer 5000 EN and during his career as an IDTU officer, he has conducted between 500 and 600 chemical breath tests utilizing it (hearing transcript at 166). The defendant called no witnesses. This court finds Officer Edwards’ testimony credible to the extent indicated herein.
Officer Edwards testified that on June 1, 2008, he administered an Intoxilyzer 5000 EN breath test to the defendant inside the 45th Precinct.[4] Being unable to obtain a reading, Officer Edwards stated, “ambient failure, what a shock.”[5] Officer Edwards testified that an ambient air failure occurs when the Intoxilyzer detects the presence of mouth alcohol instead of a deep lung sample. He also stated that if the Intoxilyzer detects the *310 presence of alcohol in the room, it may also experience ambient air failure. Should there be ambient contamination, as was the case here, a light on the machine flashes “ambient failure” (hearing transcript at 167). Officer Edwards then ordered the defendant to step away from the machine and directed him to the other side of the room, opened the door, turned on the fan and recalibrated the Intoxilyzer 5000 EN (id. at 168). Defendant then appeared to blow into the machine, but when he failed to provide a sufficient breath sample, was deemed to have constructively refused.[6]
Conclusions of Law As stated, the purpose for which this court ordered a hearing was clearly and unequivocally articulated in its decision of March 2, 2009, which was to determine “the scientific reliability of ambient air failure as a cause of the intoxilyzer’s failure to obtain a reading and whether Officer Edwards is qualified to testify to it.” Such a hearing, more colloquially referred to as a Frye hearing, is intended to determine whether testimony offered by an expert or other skilled witness has been deduced from a well-recognized scientific principle or discovery that has gained such standing and scientific recognition in the field to which it belongs so as to be scientifically reliable and justified (Frye v United States, 293 F 1013 [DC Cir 1923]).
New York courts have consistently subscribed to the Frye standard in determining the admissibility of scientifically derived evidence, such as authorizing the introduction of automobile speed evidence obtained with radar (People v Magri, 3 NY2d 562 [1958]; see also People v Dusing, 5 NY2d 126 [1959]) and analyzing breath by means of infrared energy and electrical current (People v Jones, 118 Misc 2d 687, 695 [Albany County Ct 1983, Harris, J.]). Likewise, application of Frye has necessitated the exclusion of certain evidence (People v Tarsia, 50 NY2d 1 [1980] [excluding the results of tests conducted with the voice stress analysis]; People v Leone, 25 NY2d 511 [1969] [excluding the results of lie detection tests conducted with the polygraph]; People v Forte, 279 NY 204 [1938] [excluding the results of lie detection tests conducted with the pathometer]). *311 New York courts have also applied Frye with regard to the Intoxilyzer and concluded that general acceptance by the scientific community has been sufficiently established to authorize the introduction of breathalyzer test results (People v Hampe, 181 AD2d 238, 240 [3d Dept 1992]; People v Donaldson, 36 AD2d 37, 40 [4th Dept 1971]).
While the People correctly state that “the scientific reliability of breathalyzers in general is no longer open to question,” (People v Alvarez, 70 NY2d 375, 380 [1987]), their novel theory that the odor of alcohol permeating from the defendant caused the Intoxilyzer to experience an ambient air failure certainly is. So, although it is no longer necessary to require expert testimony to establish the general reliability of the machine with regard to the nature, function, or scientific principles underlying the Intoxilyzer in every case (Hampe, 181 AD2d at 240; Donaldson, 36 AD2d at 40), here, such testimony is required to determine whether ambient air failure is indeed scientifically recognized and reliable as an accepted theory of an Intoxilyzer’s operation.
Notwithstanding the clearly stated purpose for which this court ordered a Frye hearing, the assistant district attorney inexplicably failed to present any testimony, scientific or otherwise, to establish the scientific reliability of an Intoxilyzer’s ambient air failure. Instead, he steadfastly reiterated the well-settled principle that the scientific reliability of breathalyzers in general is no longer in question. With this, neither the court nor the defendant disagreed. Obviously, that was not at issue.
Moreover, had the assistant district attorney presented sufficient expert testimony to substantiate the People’s ambient air failure theory, which he did not, Officer Edwards would have been entirely incapable of offering such expert testimony. A witness may appropriately offer expert testimony “where the conclusions to be drawn from the facts ‘depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence’ ” (People v Cronin, 60 NY2d 430, 432 [1983], quoting Dougherty v Milliken, 163 NY 527, 533 [1900]). The Court of Appeals has held that a witness who testifies as an expert “should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable” (Matott v Ward, 48 NY2d 455, 459 [1979]). Here, even though Officer Edwards was trained and qualified to *312 operate the Intoxilyzer 5000 EN, he possessed none of the requisite skill, training, education, knowledge, or experience to testify as to the scientific reliability of the prosecution’s theory regarding ambient air failure. Thus, while Officer Edwards was certainly competent to testify as to his utilization of the Intoxilyzer 5000 EN, he possessed absolutely no knowledge of the scientific operation of it, nor the science underlying the theory that it may experience an ambient air failure. All he could testify to was that the machine actually experienced an ambient air failure.
This court is mindful of the dearth of authority regarding the science underlying ambient air failure. In fact, where courts have discussed it, the discussion has been limited to an explanation and description of what it is (People v Summa, 140 Misc 2d 763, 767 [Suffolk Dist Ct 1988, Block, J.]). Conceding that there is no authority in this jurisdiction recognizing the scientific reliability of the theory that an Intoxilyzer experiences an ambient air failure because of alcohol vapors, the assistant district attorney abjectly failed to present any competent and relevant evidence to support it. Instead, the assistant district attorney indignantly insisted that the court rely on its common sense to permit the introduction of this theory at trial.
Based upon the People’s abject failure to establish the scientific reliability of the proposed ambient air failure of the Intoxilyzer 5000 EN, defendant’s motion to preclude the People from adducing at trial any testimony or evidence regarding the theory that alcohol vapors caused the Intoxilyzer 5000 EN to experience an ambient air failure is granted. The People are further precluded from offering IDTU Police Officer Edwards either as an expert on, or as being skilled in, the scientific operation of the Intoxilyzer 5000 EN or its maintenance, functionality, and causes of malfunction. The People are, of course, permitted to elicit testimony from Officer Edwards relative to his operation of the Intoxilyzer 5000 EN and administration of the breath test.

. It should be noted that on February 18, 2009, this court conducted a hearing on defendant’s motion to suppress testimony and evidence of defendant’s alleged refusal to submit to a chemical breath test at trial. Pursuant to that hearing, this court made findings of fact as to the basis for defendant’s stop and arrest as follows: On June 1, 2008, at about 3:50 A.M., Police Officer Baumann of the 48th Precinct, working alone (hearing transcript at 5), observed a Chevrolet Impala traveling on Webster Avenue from 180th Street in Bronx County proceed “through three steady red lights up to 187th Street” (id. at 6). Officer Baumann, dressed in uniform and driving a marked police vehicle (id. at 5), stopped the Chevrolet Impala, exited his vehicle and approached the driver’s side of the Impala (id. at 6-7). Officer Baumann then asked the defendant to produce a valid New York State license and paperwork to the vehicle, which he did not (id. at 7). During Officer Baumann’s conversation with the defendant, he observed that the defendant had “a strong odor of alcohol coming from his breath,” bloodshot eyes, slurred speech and a flushed face (id. at 7, 25, 31-32). Officer Baumann directed the defendant to exit his vehicle (id. at 7-8) and step to the rear (id. at 8-9). When walking to the rear of his vehicle, the defendant was unsteady “swaying back and forth . . . rocking back, to the right, [and] to the left” (id. at 32). Officer Baumann then asked the defendant to submit to a portable breath test, which the defendant did, registering a .195% blood alcohol content.

. See decision and order dated March 2, 2009.

. It should be noted that this hearing was conducted after the commencement of trial but not in the presence of the jury. All citations to the hearing record refer to this hearing conducted on March 2, 2009.

. At the hearing on February 18, 2009, Officer Baumann testified that he was present at the 45th Precinct while Officer Edwards offered the defendant an opportunity to take an Intoxilyzer breath test, which he agreed to do (hearing transcript at 11). The videotape of the chemical breath test proceeding, which was introduced as evidence during the February 18, 2009 hearing, shows Officer Edwards demonstrating to the defendant the manner in which he was to use the mouthpiece and blow into the Intoxilyzer 5000 machine. The defendant walked to the machine, placed his hands behind his back (id. at 38) and inserted the mouthpiece of the machine into his mouth hut the machine was unable to obtain a reading.

. See videotape recording of Officer Edwards and the defendant inside the 45th Precinct received in evidence as People’s exhibit 1.

. (Id.) That videotape recording shows the defendant again placing his mouth on the mouthpiece, appearing to make another attempt at blowing into the machine. The People allege, however, that he failed to provide a sufficient breath sample. At that time, the defendant was advised of the consequences of refusing to submit to the Intoxilyzer chemical breath test. After being asked specifically whether he wanted to take the chemical test, the defendant responded, “no.”