OPINION OF THE COURT
Robert M. Mandelbaum, J.
The results of an otherwise-reliable chemical test are not rendered inadmissible at an intoxicated-driving trial just because the device used to perform the test is capable of being moved.
Defendant was tried before a jury on charges of driving while intoxicated and ability impaired by the consumption of alcohol (see Vehicle and Traffic Law § 1192 [3], [1]). Prior to the commencement of trial, the People moved in limine, over defendant’s objection, to introduce evidence that at the time of his arrest, defendant had .09 of one percent by weight of alcohol in his blood, as established by a “portable breath test” (PBT) administered at the scene. Upon hearing argument by both parties, the court rendered an oral decision admitting the evidence. This opinion serves to explain the basis for the court’s prior ruling.
*183 The portability or immobility of a breath testing device is not a factor relevant to the admissibility of its results. Rather, evidence of a defendant’s blood alcohol content is admissible whenever obtained pursuant to a chemical test that meets the foundational requirements for admissibility — namely, that the testing device (1) is of a type that, when operated correctly, ordinarily produces scientifically reliable results and (2) was both in good working order and properly used on the date in question (see People v Mertz, 68 NY2d 136, 148 [1986]). Indeed,
“[u]pon the trial of any action or proceeding arising out of actions alleged to have been committed by any person arrested for a violation of any subdivision of [Vehicle and Traffic Law § 1192], the court shall admit evidence of the amount of alcohol or drugs in the defendant’s blood as shown by a test administered pursuant to the provisions of [Vehicle and Traffic Law § 1194]” (Vehicle and Traffic Law § 1195 [1]).
Irrespective of whether it is portable, the reliability of a standard breath testing instrument is shown when the device is included on the Conforming Products List of Evidential Breath Alcohol Measurement Devices (the List) as established by the United States Department of Transportation/National Highway Traffic Safety Administration (see 10 NYCRR 59.4 [b]; 75 Fed Reg 11624-01 [Mar. 11, 2010]; see also Vehicle and Traffic Law § 1194 [4] [c] [Department of Health “shall issue and file rules and regulations approving satisfactory techniques or methods of conducting chemical analyses of a person’s blood, urine, breath or saliva”]; 10 NYCRR 59.4 [a] [breath analysis instruments found on the List are approved by the Commissioner of Health for use in New York State]; 10 NYCRR 59.5 [a] [breath sample “shall be analyzed with breath analysis instruments meeting the criteria set forth in (10 NYCRR 59.4)”]).
Inclusion of a testing device on the List in itself establishes the general acceptance of the reliability and accuracy of its results and therefore dispenses with the need to present “foundational evidence thereof through expert testimony” (People v Hampe, 181 AD2d 238, 240 [3d Dept 1992]; cf. Frye v United States, 293 F 1013 [DC Cir 1923]). And the Intoximeter Aleo-Sensor FST used here to measure defendant’s blood alcohol content is, in fact, on the List and, therefore, approved for use in New York State (see 10 NYCRR 59.4 [a], [b]; 75 Fed Reg *184 11624-01).[1] Indeed, the List expressly provides that the FST is approved for both “Mobile” and “Nonmobile” use (see 10 NYCRR 59.4 [b]; 75 Fed Reg 11624-01; see also 69 Fed Reg 42237-01 [July 14, 2004] [adding FST to the List and noting that it has “been evaluated and found to meet the model specifications ... for mobile and non-mobile use”; identifying the FST as “a hand held device intended for use in stationary or roadside operation”]; 58 Fed Reg 48705-01, model specifications 1, 2.1 [Sept. 17, 1993] [establishing identical performance criteria and conformance testing methods for mobile (“designed to be transported to non-fixed operational sites in the field” [58 Fed Reg 48705-1, model specification 2.1.1]) and nonmobile (“designed to be operated at a fixed location” [58 Fed Reg 48705-01, model specification 2.1.2]) evidential breath testers]).
Contrary to defendant’s contention, People v Thomas (70 NY2d 823 [1987]) did not hold that “portable breath tests”— versus stationary breath testing devices maintained at precinct houses — are always inadmissible, or that there is something inherently unreliable about instruments that can be moved. Rather, in Thomas the Court of Appeals held simply that because in that case evidence as to the results of the PBT — an Alco-Sensor of unspecified model — was offered for the stated purpose of proving that the arresting officer had reasonable grounds to give defendant a breathalyzer test, the evidence should have been excluded as irrelevant, since reasonable cause to give a breathalyzer test is not an element of the crime of driving while intoxicated (see Thomas, 70 NY2d at 825).
And although the Appellate Division in Thomas stated that the (unspecified model) Alco-Sensor test was not admissible as evidence of intoxication, that Court based its conclusion on the People’s failure at trial to lay a proper foundation showing the test’s reliability for that purpose. As the Court explained, “No expert testimony was submitted as to the accuracy of this device and the scientific principles on which it is based. The record is completely barren of scientific evidence which would establish the reliability of the test” (People v Thomas, 121 AD2d 73, 76 [4th Dept 1986]). Here, however, the record is not barren of evidence to establish the reliability of the FST. Rather, its reliability is shown by its inclusion on the List and resulting ap *185 proval by the Commissioner of Health for use in New York, obviating the need for expert testimony (see People v Lent, 29 Misc 3d 14, 16 [App Term, 2d Dept 2010] [“The scientific accuracy of (b)reath analysis instruments approved by the New York State Department of Health is no longer open to question” (internal quotation marks and citations omitted)]; Hampe, 181 AD2d at 240; see also People v Boscic, 15 NY3d 494, 499 [2010] [noting that the Department of Health “has been charged by the Legislature to evaluate and approve specific models of breath-alcohol testing machines” (citation omitted)]).
Nor are PBTs rendered inadmissible by virtue of Vehicle and Traffic Law § 1194. Indeed, section 1194 has nothing to do with the admissibility of trial evidence — as opposed to section 1195, which expressly requires that the court “admit evidence of the amount of alcohol or drugs in the defendant’s blood as shown by a test administered pursuant to the provisions of [Vehicle and Traffic Law § 1194]” (Vehicle and Traffic Law § 1195 [1]). Section 1194, entitled “Arrest and testing,” simply establishes the circumstances under which blood alcohol testing is authorized with respect to persons suspected of driving while intoxicated or impaired, and sets forth the procedures to be followed for such authorized testing.
That Vehicle and Traffic Law § 1194 refers separately to field testing and to chemical tests (see Vehicle and Traffic Law § 1194 [1] [b] [“Field testing”]; Vehicle and Traffic Law § 1194 [2] [“Chemical tests”]) cannot reasonably be read to mean that a test cannot constitute a chemical test simply because it takes place in the field. Rather, Vehicle and Traffic Law § 1194 (1) (b) (“Field testing”) provides simply that a suspect must submit to a “breath test” — that is, a screening test — and that if such test indicates that the motorist “has consumed alcohol,” the motorist may be asked to submit to a chemical test. In other words, the “breath test” contemplated by Vehicle and Traffic Law § 1194 (1) (b) is a test that reliably shows only that some alcohol has been consumed — not how much (see Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 62A, Vehicle and Traffic Law § 1194, at 91 [1996 ed] [“Th(e) breath test, sometimes called a screening test, involves a portable machine which is used by the police on the road to determine whether there is alcohol present in the motorist being tested. This screening or breath test machine is used as a pass/fail test and is basically reliable for the determination of some presence of alcohol in a person’s blood but not the actual percentage or *186 concentration”]). Vehicle and Traffic Law § 1194 (2), by contrast, governs chemical tests, which may include “one or more of the following: breath, blood, urine, or saliva” (Vehicle and Traffic Law § 1194 [2] [a] [emphasis added]).
The FST has been determined to be reliable as an “evidential breath tester” — that is, a device which “measure[s] the alcohol content of deep lung breath samples with sufficient accuracy for evidential purposes” (58 Fed Reg 48705-01, model specification 1). Simply put, the FST, though portable, is not merely a “breath test”; it is a full-fledged chemical test as contemplated by Vehicle and Traffic Law § 1194 (2) (see 10 NYCRR 59.1 [c] [defining “(c)hemical tests/analyses” to “include breath tests conducted on breath analysis instruments approved by the (Commissioner of Health) in accordance with (10 NYCRR 59.4)”]).
To the extent that People v Santana (31 Misc 3d 1232[A], 2011 NY Slip Op 50962[U] [Crim Ct, NY County 2011]) and People v Reed (5 Misc 3d 1032[A], 2004 NY Slip Op 51662[U] [Sup Ct, Bronx County 2004]) hold to the contrary, this court respectfully declines to follow them.
Of course, foundational evidence to establish the reliability of the results of the particular FST administered to defendant is also a necessary predicate to admissibility of the People’s proffered evidence in this case (see e.g. Boscic, 15 NY3d at 497). First, just as with any nonportable breath testing device, the People must demonstrate that the machine “had been tested within a reasonable period in relation to defendant’s test and found to be properly calibrated and in working order” (Mertz, 68 NY2d at 148 [citations omitted]).[2] 3Here, the People offered two certified calibration/maintenance reports (see CPLR 4518 [a], [c]), demonstrating that the machine was determined to be functioning within an appropriate margin of error on July 26, 2010 and December 20, 2010[3] — within a few weeks before, and again approximately four months after, defendant’s arrest *187 on August 18, 2010 (see Boscic, 15 NY3d 494 [no strict six-month calibration rule required for admissibility of breath testing evidence]; see also 10 NYCRR 59.4 [c] [maintenance of a breath analysis instrument shall include “calibration at a frequency as recommended by the device manufacturer or, minimally, annually”]). These reports “adequately assured that the instrument was capable of producing accurate information when defendant was tested” (Boscic, 15 NY3d at 500).
Second, the People must establish that this properly functioning testing device was properly operated on the occasion in question by a qualified administrator of the test. Here, the officer who administered the test to defendant sufficiently testified as to the training she had received regarding the proper operation of the FST and that she had administered it to defendant in accordance with its specifications.* *[4]
Finally, that the officer who administered the test may not have maintained a continuous observation of defendant for 15 minutes prior to the test does not render the results inadmissible (cf. 10 NYCRR 59.5 [b] [subject of breath testing “shall be observed for at least 15 minutes prior to the collection of the breath sample, during which period the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked, or have placed anything in his/her mouth”]). A failure to continuously observe for the requisite period of time[5] “goes only to the weight to be afforded the test result, not its admissibility” (People v Schuessler, 14 Misc 3d 30, 32 [App Term, 2d Dept 2006]; accord Lent, 29 Misc 3d at 21-22; People v Lebrecht, 13 Misc 3d 45, 51 [App Term, 2d Dept 2006] [“the observation requirement is not strictly construed: (n)either the statute, the regulations nor the exercise of reason *188 call for (a) constant vigil” (internal quotation marks and citations omitted)]; see also People v Terrance, 120 AD2d 805, 807 [3d Dept 1986]).
Accordingly, the People’s motion to introduce evidence of defendant’s blood alcohol content obtained at the scene of his arrest must be granted.

. The FST conforms to both the model specifications for evidential breath alcohol measurement devices (58 Fed Reg 48705-01 [Sept. 17, 1993]) and the model specifications for screening devices to measure alcohol in bodily fluids (73 Fed Reg 16956-01 [Mar. 31, 2008]; see 75 Fed Reg 11624-01 n).

. Calibration “means the activity of verifying that a value generated by the instrument is in acceptable agreement with the assigned value for a traceable and/or certified reference standard, including any adjustment to the instrument to bring it into acceptable agreement” (10 NYCRR 59.1 [1]; see also Boscic, 15 NY3d at 497 [“calibrated” defined as “checked and adjusted by a trained technician”]).

. Although the July analysis reflected a calibrated reading of .083% and the December analysis, a reading of .084% — a difference of .001% — both concluded, “No Adjustment Needed Within Range” (efi 10 NYCRR 59.5 [d] [“The result of an analysis of a reference standard with an alcoholic content greater than or equal to 0.08 percent must agree wdth the reference standard *187 value within the limits of plus or minus 0.01 percent weight per volume, or such limits as set by the (Commissioner of Health)”]).

. Although proof that a chemical test was administered by an individual possessing a permit issued by the Department of Health (see 10 NYCRR 59.7) is “presumptive evidence that the examination was properly given” (Vehicle and Traffic Law § 1194 [4] [c]), the officer here testified that she had no such permit. Nevertheless, this provision “do[es] not prohibit the introduction as evidence of an analysis made by an individual other than a person possessing a permit issued by the [Department of Health]” (id.).

. Although the regulation mandates an observation period of at least 15 minutes (see 10 NYCRR 59.5 [b]), the New York City Police Department appears to have adopted a procedure requiring that the subject be “under direct observation for at least 20 minutes” (Intoxilyzer Operational Checklist, step 2, NY City Police Dept Arresting Officer’s Report — IDTU [PD 213-151]; see also NY City Police Dept Highway District IDTU Procedural Guide 1Í 7; see generally NY City Police Dept Patrol Guide 208-40).