OPINION OF THE COURT
James P. Mulley, Jr., J.
Defendant pleaded guilty to driving while intoxicated in Pen-field Town Court and was sentenced to a one-year conditional discharge. One condition required defendant to install and maintain an ignition interlock device in his motor vehicle for six months.
Defendant had a Smart Start ignition interlock device installed in his vehicle. The Monroe County Office of Probation-Community Corrections (Probation) subsequently notified the court that an ignition interlock device report indicated a failed test where the blood alcohol content (BAG) was .05% or higher. After determining that a failed test did not violate any condition imposed at sentencing, the court modified the conditions to include the additional requirement that defendant “shall not blow into the ignition interlock after consuming any alcoholic beverage.”
Thereafter, Probation notified the court that a device report indicated another failed test. A declaration of delinquency was filed, alleging that defendant violated the terms of his conditional discharge by blowing into the ignition interlock device after consuming an alcoholic beverage. Defendant denied consuming alcohol, contending that the positive test was caused by his use of mouthwash.
The court scheduled a hearing pursuant to CPL 410.70 to determine whether defendant violated a condition of the sentence. Defendant contends that the test results from the ignition interlock device are inadmissible unless the scientific reliability of the device is first established at a Frye hearing. The People contend that Frye inquiries are unwarranted in the context of a CPL 410.70 hearing.
The issue presented is whether evidence of a failed ignition interlock device test is admissible at a violation of a conditional discharge hearing without first conducting a Frye hearing.
*372 In New York, the admissibility of scientific evidence is governed by the Frye rule. “The long-recognized rule of Frye v United States [293 F 1013 (1923)] is that expert testimony based on scientific principles is admissible but only after a principle or procedure has gained general acceptance in its specified field” (People v Wesley, 83 NY2d 417, 422 [1994] [internal quotation marks omitted]). “(Attention must focus on the acceptance of such evidence as reliable by the relevant scientific community” (People v Wesley at 422).
The court concludes that the Smart Start ignition interlock device at issue is generally accepted as reliable by the relevant scientific community, and therefore, a Frye hearing is unnecessary.
“A court need not hold a Frye hearing where it can rely upon previous rulings in other court proceedings as an aid in determining the admissibility of the proffered testimony” (People v LeGrand, 8 NY3d 449, 458 [2007]). A court may find a scientific test reliable based on general acceptance as shown through judicial opinions (Matter of Lahey v Kelly, 71 NY2d 135, 141 [1987]).
An ignition interlock device is a BAG measuring device connected to a motor vehicle ignition system that requires the operator to provide a deep-lung breath sample to determine the operator’s BAG level before the vehicle can be started (see 9 NYCRR 358.3 [k]). If the operator’s BAG exceeds the calibrated setting on the device, the vehicle will not start and a failed test report is sent to the monitoring agency.
Although no reported judicial opinion in New York holds that the results of an ignition interlock device are accepted as scientifically reliable, the reliability of breath alcohol detection machines in general is well established. In People v Alvarez, the Court of Appeals reaffirmed its prior decisions which held that “the scientific reliability of breathalyzers in general is no longer open to question” (People v Alvarez, 70 NY2d 375, 380 [1987], quoting People v Mertz, 68 NY2d 136, 148 [1986]). In People v Boscic, the Court again spoke to the reliability of breathalyzers, stating, “ [b]reath-alcohol detection machines have long been considered scientifically reliable” (People v Boscic, 15 NY3d 494, 497 [2010]).
Judicial opinions regarding Alco-Sensor breath screening devices also support the conclusion that breath alcohol detection machines are considered scientifically reliable. In People v Thomas (121 AD2d 73, 76 [4th Dept 1986]), the Court found *373 that, while Alco-Sensor test results are inadmissible at trial for the purpose of establishing intoxication, such results are admissible at suppression hearings, because “breath screening devices have won acceptance as being sufficiently reliable to establish probable cause for an arrest.” Similarly, in People v Jones (10 Misc 3d 413, 416 [Dutchess County Ct 2005], affd 50 AD3d 1058 [2d Dept 2008]), the court stated that the Alco-Sensor is “sufficiently reliable for use in determining the presence of alcohol,” and found that it was not error to admit defendant’s positive Alco-Sensor tests into evidence at a violation of probation hearing.
Other courts have examined statutory and regulatory schemes to determine if scientific evidence is generally accepted as reliable by the relevant scientific community.
Vehicle and Traffic Law § 1194 (4) (c) requires the Department of Health (DOH) to issue regulations approving satisfactory methods of conducting chemical analysis of a person’s blood, urine, breath or saliva. Pursuant to that directive, DOH evaluates specific models of breath alcohol testing machines and publishes a list of devices approved for use by law enforcement (see People v Boscic at 499; 10 NYCRR 59.4 [b]). Numerous courts have relied on the DOH list of approved breath testing instruments to establish the reliability of a particular device. For example, in People v Hampe (181 AD2d 238 [3d Dept 1992]), the Court found that inclusion of the BAG Verifier on the list of approved devices obviated the need for a Frye hearing. The general acceptance of the reliability of the test results of the BAG Verifier “was established by reason of the specific inclusion of the BAG Verifier in the list of breath-testing instruments approved by DOH in regulations promulgated pursuant to Vehicle and Traffic Law § 1194 (4) (c)” (People v Hampe at 240; see also People v Robinson, 53 AD3d 63, 70 [2d Dept 2008]; People v Lent, 29 Misc 3d 14 [App Term, 2d Dept 2010]).
The statutory and regulatory scheme governing the use of ignition interlock devices is similar to that governing breathalyzer machines. The Vehicle and Traffic Law charges DOH with the task of approving ignition interlock devices (Vehicle and Traffic Law § 1198 [6] [a]). Manufacturers of ignition interlock devices must apply to DOH to certify a device for use in New York (10 NYCRR 59.10). The Office of Probation and Correctional Alternatives publishes a list of qualified ignition interlock device manufacturers. The Smart Start ignition interlock device at issue here is included on the published list *374 for all regions, which further supports a finding that the device’s reliability has been accepted by the relevant scientific community.
Other judicial decisions analyze whether the proffered scientific evidence is generally accepted as reliable by government agencies.
In People v Hopkins (46 AD3d 1449 [4th Dept 2007]), the court admitted data contained in the sensing diagnostic module (SDM) in defendant’s automobile, which provided information regarding the speed at which defendant was traveling. The Court concluded that a Frye hearing was not required because data recorded on the SDM is “generally accepted as reliable and accurate by the automobile industry and the [National Highway and Traffic Safety Administration]” (id. at 1450).
People v Oehler (12 Misc 3d 1101 [Warren County Ct 2006], affd 52 AD3d 955 [3d Dept 2008]) is also instructive. There, the court considered the admissibility of the results of an ethyl glucuronide (EtG) test that showed defendant’s urine was positive for the presence of a metabolite produced by the body upon the ingestion of alcohol. The court took judicial notice that “the National Transportation Safety Board, the Federal Aviation Administration and the Civil Aerospace Medical Institute routinely test for EtG to determine whether alcoholic beverages have been consumed,” and admitted the test results at defendant’s violation of probation hearing without first conducting a Frye hearing (12 Misc 3d at 1102-1103).
The same analysis has been applied to breath testing devices. In People v Hampe, in addition to the presence of the device on the DOH list, the Court cited acceptance of the BAG Verifier by the National Highway Traffic Safety Administration (NHTSA) in reaching its conclusion that expert testimony concerning the accuracy and reliability of the device was unnecessary.
To certify an ignition interlock device in New York State, the manufacturer must demonstrate to the satisfaction of DOH that “the model meets or exceeds the model specifications for breath alcohol ignition interlock devices adopted by the NHTSA” (10 NYCRR 59.10 [c] [1]). Thus, the NHTSA, the governmental agency responsible for research relating to traffic safety, has accepted the reliability of the Smart Start ignition interlock device at issue.
The general acceptance of breath testing devices in judicial opinions, the inclusion of the Smart Start ignition interlock de *375 vice on the list of certified devices compiled by DOH, and the requirement that all certified ignition interlock devices meet or exceed the model specifications adopted by NHTSA, compels the conclusion that a Frye hearing is not necessary to determine the reliability of the device. Accordingly, the court takes judicial notice that the Smart Start ignition interlock device is generally accepted by the relevant scientific community as a reliable device for the purpose of showing that a person has consumed alcoholic beverages.
Although the People are not required to provide expert testimony regarding the scientific principles underlying the ignition interlock device at the CPL 410.70 hearing, the People must establish a proper foundation for reception of the evidence. Once Frye has been satisfied, “[t]he focus moves from the general reliability concerns of Frye to the specific reliability of the procedures followed to generate the evidence proffered” (People v Wesley at 429). The foundation for the admissibility of breath alcohol test results
“remains premised on the People’s ability to demonstrate . . . that the device was in proper working order when it was used to test an accused. And nothing prevents an accused from seeking to introduce relevant evidence that may affect other foundational issues or the weight that should be given to [the] results” (People v Boscic at 500 [internal quotation marks omitted]).
Finally, the People’s assertion that a Frye inquiry is completely unwarranted in the context of a CPL 410.70 hearing should be addressed. That scientific evidence is being offered at a CPL 410.70 hearing, standing alone, is not a basis to deny a Frye hearing.
CPL 410.70 (3), which governs the manner of conducting a hearing to determine whether a defendant has violated a condition of his sentence, states that “the court may receive any relevant evidence not legally privileged” (emphasis added). To be relevant, evidence must have a tendency to make the existence of a material fact “more probable or less probable than it would be without the evidence” (People v Davis, 43 NY2d 17, 27 [1977]; see also People v Alvino, 71 NY2d 233, 241 [1987]). Scientific evidence that is not generally accepted as reliable in the scientific community is totally lacking in probative value and not relevant (see Parker v Mobil Oil Corp., 7 NY3d 434, 447 [2006]; People v Burton, 153 Misc 2d 681, 683 [Sup Ct, Bronx County 1992]; *376 Matter of M. Z., 155 Misc 2d 564, 568 [Fam Ct, Onondaga County 1992]; People v Morris, 8 Misc 3d 360, 363 [Crim Ct, Richmond County 2005]). Consequently, such evidence should be excluded from any fact-finding hearing, including a CPL 410.70 hearing.*
The necessity of a Frye hearing turns on the reliability of the proffered scientific evidence, not on the nature of the proceeding at which it is offered. In this case, a Frye hearing is unnecessary because the court may take judicial notice that the proffered scientific evidence, test results from a Smart Start ignition interlock device, has been generally accepted as reliable by the relevant scientific community

 No appellate court in New York State has ruled on the necessity of conducting a Frye hearing before admitting novel scientific evidence at a CPL 410.70 hearing. In People v Oehler (52 AD3d 955 [2008]), the Third Department did not reach defendant’s contention that the court erroneously elicited testimony at defendant’s violation of probation hearing on the results of an EtG test without first conducting a Frye hearing. However, lower courts have found Frye hearings necessary before admitting scientific evidence at bench trials, suppression hearings, and post-plea proceedings. (See e.g. People v Dorcent, 29 Misc 3d 1165 [Crim Ct, Kings County 2010] [where the court held a Frye hearing before deciding whether evidence from a secure continuous remote alcohol monitoring bracelet, a transdermal alcohol detection device which measures the alcoholic content of perspiration, could be admitted at a hearing to determine if defendant violated the terms of his plea agreement].)