[4 NYS3d 829]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JAMEL SANTIAGO, Defendant.

Supreme Court, Bronx County, December 11, 2014

**APPEARANCES OF COUNSEL**

*Robert T. Johnson, District Attorney (Jessica Groppe* of counsel), for plaintiff.

*Edward J. Rinaldi,* White Plains, for defendant.

**OPINION OF THE COURT**

APRIL A. NEWBAUER, J.

Defendant was charged with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3]), a misdemeanor. Prior to trial the People moved in limine seeking to introduce the results of a field sobriety test (hereinafter FST). The defendant opposed the FST evidence as unreliable and contrary to the Court of Appeals ruling in *People v Thomas* (70 NY2d 823 [1987], *affg* 121 AD2d 73 [4th Dept 1986]), and its progeny.[1] On October 20, 2014, the court conducted a hearing to determine the admissibility of the Intoximeter Alco-

---

1. *See also People v MacDonald,* 227 AD2d 672 (2d Dept 1996); *People v Santana,* 31 Misc 3d 1232(A), 2011 NY Slip Op 50962(U) (Crim Ct, NY County 2011); *People v Reed,* 5 Misc 3d 1032(A), 2004 NY Slip Op 51662(U) (Sup Ct, Bronx County 2004).

Sensor FST results. The court concludes that results of an Intoximeter Alco-Sensor FST taken under proper conditions may be admitted at trial, but that faulty administration of the FST renders the results inadmissible in this case.

### Admissibility of Portable Breath Test Results

Technological advances have changed the landscape of field sobriety tests in the last several decades: "[S]cientific knowledge has advanced dramatically, leading to significant technological changes in breath-alcohol detection devices. The scientific methods incorporated in modern-day breath testing instruments are substantially different from the earlier generations of these devices." (*People v Boscic*, 15 NY3d 494, 498-499 [2010] [rejecting a per se six-month periodic testing standard for alcohol testing devices].) Nearly three decades since *People v Thomas* (121 AD2d 73 [4th Dept 1986]), many courts have arrived at a more nuanced view and identified criteria for admitting at trial the results of breath tests administered in the field.[2]

First, New York State through the Department of Health has adopted the National Highway Traffic Safety Administration's (NHTSA) approved list of breath measurement devices, and since May of 2007, the Intoximeter Alco-Sensor has been authorized for both mobile and nonmobile use. (*See* 10 NYCRR 59.4 [b]; *see also* 69 Fed Reg 42237-01 [July 14, 2004]; Vincent J. Costa, *Admissibility of Field Test Results at Trial to Prove Intoxication*, 29 Touro L Rev 1379 [2013].) As was noted in *People v Aliaj* (36 Misc 3d 682 [Sup Ct, NY County 2012]), the distinction the New York Vehicle and Traffic Law draws is not between reliable and unreliable devices. The Vehicle and Traffic Law does use different terms—"field testing" to identify the quick and dirty predicate to an arrest, versus "chemical tests" including breath, blood, urine or saliva, to classify those usually administered in the precinct or in other controlled environments. However, it is scientific reliability that must dictate whether test results from a particular device are admissible, not the terminology employed in the statute to categorize these

---

**2.** *People v Jones* (33 Misc 3d 181 [2011]), *People v Hargobind* (34 Misc 3d 1237[A], 2012 NY Slip Op 50450[U] [2012]) and *People v Aliaj* (36 Misc 3d 682 [2012]), are all examples of the current trend. (*See also* Vincent J. Costa, *Admissibility of Field Test Results at Trial to Prove Intoxication*, 29 Touro L Rev 1379 [2013]; *but see People v Santana*, 31 Misc 3d 1232[A], 2011 NY Slip Op 50962[U] [2011]; Peter Gerstenzang & Eric H. Sills, *Handling the DWI Case in New York*, part II, ch 7 [2014 ed].)

devices or tests. In *Aliaj* (36 Misc 3d at 692), the court interpreted the Vehicle and Traffic Law as presuming field breath test results inadmissible at trial, citing practice commentaries written prior to the decisions in *Jones* and *Hargobind*, but recognized that the statute does not address admissibility. Nothing in the Vehicle and Traffic Law precludes admission of a scientifically reliable test performed in the field as long as it meets the standards of what the legislature referred to as a "chemical test." Indeed, the Department of Health has been charged by the legislature to evaluate and approve specific models of breath-alcohol testing machines. (*See People v Boscic*, 15 NY3d 494, 499 [2010].)

Therefore, the Intoximeter Alco-Sensor's certification by state and federal regulators is sufficient to establish it *is capable* of producing reliable results in the field if the conditions necessary for its proper function are replicated. Over time, a consensus has developed around this device because of its accuracy, assuming certain recommended steps are followed. Thus contrary to defendant's position here, a *Frye*[3] hearing is not required to examine the reliability of the test. (*Cf. People v Hargobind*, 34 Misc 3d 1237[A], 2012 NY Slip Op 50450[U] [Crim Ct, Kings County 2012]; *People v Bohrer*, 37 Misc 3d 370 [Penfield Just Ct 2012].) Since the Intoximeter Alco-Sensor can function as more than a crude "breath test"—it may be treated as less like a traditional "field test" and more the equivalent of a "full-fledged chemical test" within the meaning of Vehicle and Traffic Law § 1194 (2) (a). (*See People v Jones*, 33 Misc 3d 181, 186 [Crim Ct, NY County 2011].)

*People v Kulk* (103 AD3d 1038 [3d Dept 2013]), where the Third Department reviewed a trial court's refusal to admit the results of a portable breath test, is distinguishable on its facts. In that case, it was the defendant who unsuccessfully argued on appeal that the trial court should have admitted preliminary breath tests results into evidence. Among other things, the defendant failed to preserve his claim that the preliminary test should have been admitted for the limited purpose of showing that the machine on which he was later tested may not have functioned correctly. In any event, there is nothing to indicate that adequate foundation evidence was presented to justify the admission of the results for the particular device at issue in *Kulk*.

---

3. *Frye v United States*, 293 F 1013 (DC Cir 1923).

Under the foundation test set out in *People v Hargobind* (34 Misc 3d 1237[A], 2012 NY Slip Op 50450[U]), the prosecution is required to establish all of the following: (1) that the device has been tested, producing a reference standard, within a reasonable time period prior to the test on the defendant; (2) that the device was calibrated and working properly on the day in question; (3) that these preparatory procedures, and the actual test on the defendant, were conducted by properly trained persons; and (4) that the field test on the defendant was conducted in conditions that would lead to scientifically reliable results, including, but not limited to, that the defendant was observed for at least 15 to 20 minutes prior to the test to ensure that he had not ingested alcohol or had other contaminants in his mouth which would skew the test results. The waiting period has been described by at least one expert as the "cornerstone" of chemical breath testing.[4] Moreover, as has been observed, the conditions under which an officer performs a field test at the scene of a car stop are fraught with potential for error and must be carefully scrutinized. Distractions on a road or public street, the environment or weather, the degree of lighting and various other factors tend to complicate the administration of the test and undercut its reliability. (*See People v Aliaj*, 36 Misc 3d 682, 693 [2012].)

## Foundational Hearing

The People called one witness, Detective William Hanlon of the Highway District, who administered the test to defendant Santiago. This Detective was both extensively trained and highly experienced in the use of portable breath devices and field sobriety testing. After completing an online training course, Detective Hanlon was certified as a tester by the maker of the Intoximeter Alco-Sensor FST, and following in-house training has served as both a tester and instructor for the NYPD.

Detective Hanlon explained how the Intoximeter FST takes a sample of a person's breath and converts that breath sample into a BAC percentage, or blood alcohol concentration. He detailed how he instructs motorists to use the FST by taking a deep breath and blowing for three to five seconds, and to make a seal around the breath tube that he supplies before blowing. The Detective has used the Intoximeter Alco-Sensor FST in all

---

**4.** *See e.g. People v Aliaj*, 36 Misc 3d 682, 689 (2012) (testimony of expert witness Herbert Leckie).

of his approximately 500 drunk driving arrests. Moreover, Detective Hanlon indicated that in doing so he has never obtained a result in the field inconsistent with subsequent testing at the precinct.

On January 16, 2012, Detective Hanlon was in uniform in a marked police car with his partner, when he first observed the defendant driving his car in the vicinity of Van Cortlandt Park. The defendant left the Major Deegan at the Henry Hudson Parkway exit and traveled on the Mosholu Parkway. The Detective testified that defendant Santiago consistently crossed over the broken white line on the parkway and was not able to maintain his lane of traffic on the two-lane parkway. Detective Hanlon also estimated that the defendant was traveling approximately 85 miles per hour in a posted 50-mile-per-hour zone. The police car followed him for about two to three miles to the exchange where the Henry Hudson Parkway meets the Saw Mill River Parkway. At approximately 3:01 a.m., Detective Hanlon and his partner stopped the defendant's vehicle before it crossed into Westchester County.

Detective Hanlon approached the passenger side of the car and his partner, Police Officer Milligan, approached the driver's side. The defendant was seated behind the wheel. Officer Milligan asked the defendant to step from his vehicle. As he approached the defendant, Detective Hanlon noticed a strong odor of alcohol, the defendant's bloodshot watery eyes, and how unsteady he was on his feet. When the Detective asked Santiago whether he had had anything to drink, the defendant said "one beer" and that he did not remember how long ago, but it was a while earlier. Detective Hanlon asked the defendant to submit to the FST and instructed him on how to blow into the tester tube. At approximately 3:06 a.m., Officer Hanlon administered the FST test to the defendant. The machine registered .149% BAC. The defendant was then placed under arrest.

The Detective also testified regarding the calibrations of the FST machine and that it was properly calibrated on the date in question and in good working condition. Detective Hanlon was issued the FST in 2008 and the same instrument, serial number 43325, was continuously in his summons pouch on his person or in his locker until it was replaced in 2013. Detective Hanlon tested the FST for proper calibration on June 9, 2011

and again on September 10, 2014.[5] On January 16, 2012, Detective Hanlon turned the power button on and thereby set in motion a self check for any error codes. Although it was only 17 degrees on that date, no error codes arose and Detective Hanlon proceeded to take a reading.

Detective Hanlon testified that he would have waited 10 to 20 minutes to eliminate any possibility of contamination from mouth alcohol, but the defendant said he had just consumed one alcoholic beverage much earlier, and that he did not eat anything or recently vomit which could have distorted the results. Further, the defendant did not exude any odor indicative of vomiting.

On cross-examination, Detective Hanlon admitted that while he was administering the test, he and the defendant stood just two to three feet from the roadway and that he was concerned for their safety. He also acknowledged that radio frequencies might be able to disturb the machine's readings and he had his radio on at the time, but that he did not see any telltale error codes.

## Conclusions

■ While much of the Detective's testimony was credible, his proffered explanation for relying on the defendant's self-serving statements regarding alcohol consumption was not. An experienced highway detective could not have reasonably concluded that a driver at 3:00 a.m. exceeding 85 miles per hour, weaving between lanes, his eyes bloodshot and breath rife with alcohol, had drunk just one beer in the distant past. The Detective admitted as much when asked directly. The Detective's decision to deviate from protocol by administering the test without a waiting period easily could have skewed the test results upward, to the prejudice of the defendant. The failure of the tester to adhere to established protocols for administering the test renders the results inadmissible. The court rejects the contention that the officer's actions were justified under the circumstances and finds that the People have

---

**5.** In *People v Boscic* (15 NY3d 494 [2010]), the Court noted that the New York State Department of Health had determined that breath testing machines must be calibrated at a frequency recommended by the device manufacturer, but not less than once a year, when assessing the adequacy of foundation requirements. There was no testimony as to the manufacturer's recommendation, although the device in this case had been tested well within a year before its use.

not sustained their burden to lay a proper foundation for the admission of the test results.

The prosecution also argues that errors in the administration of the test go to weight and not admissibility. If police failure to follow the proscribed protocol were a minimal error with de minimis consequences that argument might have more force. However, the time lapse is a critical component of the test (*see People v Aliaj*, 36 Misc 3d 682, 689 [2012]), and the resulting test evidence is therefore too significant to warrant its admission before the jury, even with a curative instruction.

Accordingly, although results of the Intoximeter Alco-Sensor FST may be admitted at trial in appropriate circumstances, the results of the field test performed in this case are inadmissible.