OPINION OF THE COURT
Dena E. Douglas, J.
Defendant, Mark George, is charged with operating a motor vehicle while under the influence of alcohol pursuant to Vehicle and Traffic Law § 1192 (3) and (1). The People have moved for admission of the results of a breath test made at the scene of the arrest.
The People argue that because the device used to administer the breath test in the field, an Intoxilyzer S-D2, is listed on the “Conforming Products List of Evidential Breath Measurement Devices” compiled by the New York State Department of Health pursuant to 10 NYCRR 59.4 (b), its results are automatically admissible for any purpose, as its inclusion on the list in itself establishes the general acceptance of the reliability and accuracy of the instrument in the scientific community.
The People also argue that a literal reading of Vehicle and Traffic Law § 1195 (1) mandates the admissibility of field tests administered pursuant to Vehicle and Traffic Law § 1194 (1) (b) and chemical tests administered pursuant to Vehicle and Traffic Law § 1194 (2). The People’s motion was denied orally on May 18, 2015. The court’s reasoning is described below.
Discussion
The People argue that because the breathalyzer used for the field sobriety test, the Intoxilyzer SD-2, is on the conforming products list of the New York State Department of Health, was recently calibrated and in good working order, and was administered by an officer trained and certified to use the device, the court should reverse long-standing precedent and allow the results of the field test to be introduced in the People’s case-in-chief against defendant.
Although we refused to accept their similar reasoning in People v Normatov, an earlier unpublished opinion of this court, the People again rely on People v Hampe (181 AD2d 238 [3d Dept 1992]) as the controlling legislation on the admission of breath test results and elimination of the need for expert testimony establishing the accuracy and reliability of a testing *678 device.[1] (People v Normatov, Crim Ct, Kings County, June 23, 2014, docket No. 2012KN075281.)
However, more than 20 years after Hampe, in 2013, the Appellate Division, Third Department made a distinction between admission of the results from a preliminary field sobriety test and the results of a later evidentiary chemical test. (People v Kulk, 103 AD3d 1038 [3d Dept 2013].) The Kulk decision denied admission of the preliminary breath test carried out on an alco-sensor device by sustaining an objection to the admission of the results from that device. Its opinion states:
“We reject defendant’s claim that County Court should have admitted into evidence the results of an alco-sensor preliminary breath test that allegedly measured his BAC at only .06. Although the alco-sensor test may be used to establish probable cause for an arrest, it is not admissible to establish intoxication, as its reliability for this purpose is not generally accepted in the scientific community.” (Id. at 1040 [citations omitted].)
The chemical test performed on defendant Kulk using a device called the Data Master was received into evidence, along with the operational checklist for using the Data Master, and records showing the periodic testing and calibration of the equipment. The Third Department stated that “[d]uring direct examination of [Officer] Swain, who administered the test, [the Court held that] the People established ‘evidence from which the trier of fact could reasonably conclude that the test results were derived from a properly functioning machine using properly constituted chemicals’ ” (id. at 1041 [citations omitted]).
The Kulk decision makes admittance of a breath test turn on whether the test given is a preliminary screening test or an evidentiary chemical test, with emphasis on the conditions under which the test was given. While the People have shown that the Intoxilyzer SD-2 is on the conforming products list, that it was recently calibrated, and that it was administered by a person trained and certified to do so, the original distinction between a preliminary test given in the field and a test given *679 under controlled conditions is neither eliminated nor justified as no longer necessary. In addition to the type of equipment used, the validity of its working order and documentation of the test administrator’s training and the use of proper procedures, a test given in the field is subject to other factors that might affect the reliability of the test results. People v Santiago (47 Misc 3d 195, 199 [Sup Ct, Bronx County 2014]) describes a few of these factors:
“[whether] the field test on the defendant was conducted in conditions that would lead to scientifically reliable results, including, but not limited to, that the defendant was observed for at least 15 to 20 minutes prior to the test to ensure that he had not ingested alcohol or had other contaminants in his mouth which would skew the test results. . . .[2]
“Moreover, as has been observed, the conditions under which an officer performs a field test at the scene of a car stop are fraught with potential for error and must be carefully scrutinized. Distractions on a road or public street, the environment or weather, the degree of lighting and various other factors tend to complicate the administration of the test and undercut its reliability.”
The Santiago decision makes it clear that in order to establish a foundation for admission of a preliminary test carried out in the field under uncontrolled conditions, the People must show more than the base factors usually required for admission of a chemical test carried out in a controlled environment.
It is our considered opinion that the necessary standard has not been met here. In addition to the lack of documentation regarding the careful observation of defendant for 20 minutes prior to the administration of the test,[3] it is clear that the accident scene was necessarily distracting. Defendant’s vehicle was up on a sidewalk and in contact with a fence. In addition to the officers and the two vehicle drivers, the owner of the damaged property was present, along with other people from the neighborhood.
*680 Until a contrary ruling is pronounced by the Appellate Division, Second Department, by another Appellate Division or the Court of Appeals, we are constrained by People v Kulk.[4]
The People offer People v Turner, a post-Kulk case (47 Misc 3d 100 [App Term, 1st Dept 2015]), where the Appellate Term, First Department, sustained admission of the results of a field test by a lower trial court. In addition to this case being from the Appellate Term and thus not being the precedential equivalent of the Kulk opinion,[5] it does not definitively support admission of a portable field breath test administered at the scene of a traffic stop but calls it “harmless [error] ... in view of the overwhelming evidence of defendant’s guilt.” (47 Misc 3d at 101.)
We find the People’s arguments unavailing.
Conclusion
The People’s motion is denied.

. Additionally, it is worth noting that Hampe is concerned only with the admission of results from a chemical testing carried out under controlled conditions at the State Police substation. Field sobriety testing was carried out by the arresting officer in Hampe, but there was never a question of the admission of the results of that test and there is no discussion of admitting those results.

2. This waiting period has been described as the cornerstone of chemical breath testing in People v Aliaj (36 Misc 3d 682 [Sup Ct, NY County 2012]), where the court proposed that preliminary field tests be considered presumptively inadmissible.

. As recommended by the Operator’s Manual of the Intoxilyzer S-D2.

. Mountain View Coach Lines v Storms, 102 AD2d 663, 664 (2d Dept 1984).

. See e.g. People v Pestana, 195 Misc 2d 833 (Crim Ct, NY County 2003); People v Gundarev, 25 Misc 3d 1204(A), 2009 NY Slip Op 51972(U) (Crim Ct, Kings County 2009).